17111

JOHN E. EDENS *ET AL.,* Appellants, v. CITY OF COLUMBIA *ET AL.,* Respondents

(91 S. E. (2d) 280)

564

F. Barron Grier, Jr., Esq., of Columbia, for *Appellant,* John E. Edens,

*John Grimball, Esq.,* of Columbia, *for Appellants, W. G. Belser* and *Pressley Holding Company,*

*Messrs. S. Augustus Black* and *McKay, McKay, Black & Walker,* of Columbia, *for Appellant, Minnie B. Hammond,*

*Messrs. Paul A. Cooper* and *John W. Sholenberger,* of Columbia, *for Respondent, City of Columbia, S. C.,* and *James F. Dreher,* and *Robinson, McFadden & Dreher,* of Columbia, *for Respondent, Housing Authority of the City of Columbia, S. C., and its Commissioners,*

*Messrs. Frank H. Bailey, Corporation Counsel, City of Charleston,* and *Sinkler, Gibbs & Simons,* all of Charleston, *for Amicus-Curiae,*

January 30, 1956.

STUKES, Justice.

The Housing Authority of the City of Columbia has proceeded under the "Redevelopment Law", section 36-401 *et seq.* of the Code of 1952, and determined that an area of the city is a "blighted" area, which is principally occupied by slum dwellings; and they propose to take the property, by condemnation if necessary, clear it of the present structures and sell it at the then fair value, a portion of it to the University of South Carolina for the expansion of it, and the remainder, which is the most of it, to private persons and corporations for sites for light industry, with restrictions upon the use to accomplish the purpose.

Originally the plan encompassed fourteen contiguous city blocks but, during the litigation, the University acquired two blocks by purchase and another block has been eliminated; thus the project is now comprised of two separate areas, one consisting of two blocks which it is intended to dispose of to the University for its educational use, and nine blocks to be disposed of to private enterprise for commercial and industrial use. The nine block area is bounded North by Senate Street, East by Assembly Street, South by Blossom Street, and West by Lincoln Street, with the exception of the block occupied by the Standard Warehouse at the southwest corner of the area.

There appears to be no controversy with respect to the two blocks which it is intended will eventually be conveyed to the University because they are subject to the right of eminent domain for that unquestioned public use. Therefore, this adverse decision as to the nine-block area should not affect the plan as to the two-block area which is destined for the use of the University.

The evidence establishes that the most of the existing structures on the nine-block area are low-rent dwellings and the owners of some of them are the plaintiffs in this action and contest the constitutionality of certain features of the Redevelopment Law and particularly the right of the Authority to take their property by eminent domain and without their consent.

Reference should be had to the recent case of *Richards v. City of Columbia,* 1955, 227 S. C. 538, 88 S. E. (2d) 683, in which the constitutionality of the far-reaching Substandard Housing ordinance of the City of Columbia was upheld. Under the terms of that ordinance the presently substandard residences in the area may be made to conform to the rigid standards of it, or they may be required to be closed for habitation or demolished by the owners.

It is noted from the above that this is not a slum clearance project, within the authority of *McNulty v. Owens,* 188 S. C. 377, 199 S. E. 425. The project does not contemplate erection of housing upon the land for the present residents of the area. It is estimated that over five hundred families, comprised of about twenty-five hundred persons, now occupy the residences upon it.

The master and the trial court upheld the law and the project against various grounds of attack. Several questions have been argued on appeal but it appears that there need only be decided whether the power of eminent domain may be exercised by respondents to obtain title to the privately owned property in the area which is not earmarked for the use of the University, except that it is

determined without discussion that that issue is "ripe for adjudication" under the Uniform Declaratory Judgments Act, perforce which the action was brought. Section 10-2001 *et seq.* of the Code of 1952. *Foeller v. Housing Authority of Portland,* 1953, 198 Or. 205, 256 P. (2d) 752.

As was said in *Crommett v. City of Portland,* Me. 1954, 107 A. (2d) 841, 849: "It is apparent that without the right of eminent domain the purposes of the [Redevelopment] Act cannot be carried out. Accordingly, the constitutionality of the Act may be tested by reference only to the principles of law of eminent domain. Without eminent domain the Act fails".

There are similar statutes in the District of Columbia and many states under which the issue has arisen. The greater number of the decided cases sustain condemnation of private property for "redevelopment" purposes. The decisions are collected in an annotation in 44 A. L. R. (2d) 1414. It appears that only the courts of Georgia and Florida have held unqualifiedly to the contrary. *Housing Authority of City of Atlanta v. Johnson,* 1953, 209 Ga. 560, 74 S. E. (2d) 891, 893. *Adams v. Housing Authority of City of Daytona Beach,* Fla. 1952, 60 So. (2d) 663. From the opinion in the first cited case the following is quoted as pertinent here:

"In so far as the redevelopment plan here in question is concerned, it affirmatively appears that there is now ample housing for the people to be displaced and not one dwelling house will be erected. It follows, the object here sought is not to provide more housing for people of low income or for anyone else, and is not to relieve a housing shortage of any kind. The object is to clear away slum or blighted areas and then to have the property redeveloped by private individuals for private purposes in such manner as the city and Housing Authority determine to be best. The power of eminent domain is to be exercised to accomplish this result. The property is to be sold to people who could have no interest in acquiring the property other than as a means to make money.

If the property of one individual can be taken from another for this purpose, where does the power of eminent domain stop?"

Of course, the constitutional provisions vary, and we are bound by ours and our former decisions construing it, to which we shall later advert. In some of the states the constitutions of them have been amended for the very purpose of public housing and redevelopment. *Herzinger v. Mayor & City Council of Baltimore,* 1953, 203 Md. 49, 98 A. (2d) 87; *Murray v. LaGuardia,* 1943, 291 N. Y. 320, 52 N. E. (2d) 884; *Redfern v. Board of Commissioners of Jersey City,* 1948, 137 N. J. L. 356, 59 A. (2d) 641; *State on inf. of Dalton Atty. Gen. v. Land Clearance etc. of Kansas City,* 1954, 364 Mo. 974, 270 S. W. (2d) 44; and *Land Clearance for Redevelopment Authority of City of St. Louis v. St. Louis, Mo. Sup.* 1954, 270 S. W. (2d) 58. In still other states the power of eminent domain may be exercised for a public purpose, benefit, or the public welfare, as contrasted with the requirement of our constitution that it be for a public use. *Redevelopment Agency, etc. v. Hayes,* 1954, 122 Cal. App. (2d) 777, 266 P. (2d) 105; *Schenck v. City of Pittsburg,* 1950, 364 Pa. 31, 70 A. (2d) 612; *State ex rel. Bruestle v. Rich,* 1953, 159 Ohio St. 13, 110 N. E. (2d) 778; *Nashville Housing Authority v. City of Nashville,* 1951, 192 Tenn. 103, 237 S. W. (2d) 946; *Velishka v. City of Nashua,* 1954, 99 N. H. 161, 106 A. (2d) 571, 44 A. L. R. (2d) 1406; *Gohld Realty Co. v. City of Hartford,* 1954, 141 Conn. 135, 104 A. (2d) 365, 368. From the last cited we quote:

" 'In this state it is settled that public use means public usefulness, utility, or advantage, or what is productive of general benefit, so that any appropriating of private property by the state under its right of eminent domain, for purposes of great advantage to the community, is a taking for public use.' " (Citing earlier Connecticut cases.)

In the light of the varying constitutional provisions, some the result of recent amendments, and the diverse judicial interpretations of the provisions, the balance of authority is

not as uneven as the numbers of decisions of opposite results indicate. Another important consideration in evaluating the decisions of contrary result by other courts is the fact that in some of them there were strong dissents. Especially noteworthy is the dissenting opinion of Chief Justice Flynn of the Supreme Court of Rhode Island, in which he was joined in result by another of the justices, in Opinion to the Governor, 1949, 76 R. I. 249, 69 A. (2d) 531. See also, *Ajootian v. Providence Redevelopment Agency*, 1952, 80 R. I. 73, 91 A. (2d) 21.

An unusual approach to the problem appears in *David Jeffrey Co. v. City of Milwaukee*, 1954, 267 Wis. 559, 6 N. W. (2d) 362, the opinion in which refers the exercise of the power of eminent domain to the police power and it is said that eminent domain stems from the police power. However, these powers of the sovereign are not the same, and, notably, just compensation is made in the case of the exercise of eminent domain, but none for loss by the property owner which results from constitutional exercise of the police power. Example of the latter is found in our case of *Richards v. City of Columbia, supra.* The distinction between the powers is pointed out in *Adams v. Housing Authority of City of Daytona Beach, supra,* 60 So. (2d) 663.

Section 17 of Article I of our State Constitution of 1895 contains the following: "Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor." Our controlling decisions are to the effect that "public use" means just that and private property cannot be taken except for public use, without the consent of the owner. The following is from *Riley v. Charleston Union Station Co.*, 71 S. C. 457, 51 S. E. 485, 496:

"It is not easy to give a definition of 'public use' which will be adequate to cover every case that may properly fall within the term, and this case does not call for an attempt to define the term. Some cases take the very broad view that

'public use' is synonymous with 'public benefit.' A more re-
stricted view, however, would seem to better comport with
the due protection of private property against spoliation un-
der the guise of eminent domain. Judge Cooley, in his Con-
stitutional Limitations, 654, says: 'The public use implies
possession, occupation, and enjoyment of the land by the
public at large or by public agencies; and the due protection
of the rights of private property will preclude the govern-
ment from seizing it in the hands of the owner, and turning
it over to another on vague grounds of public benefit to
spring from a more profitable use to which the latter will
devote it.' In Lewis on Eminent Domain, § 165, it is said
that 'public use' means the same as 'use by the public.' These
definitions involve the idea that the public must have a defi-
nite and fixed use of the property to be condemned, inde-
pendent of the will of the person or corporation taking title
under condemnation, and that such use by the public is pro-
tected by law. *Fallsburg Power & Mfg. Co. v. Alexander,*
101 Va. 98, 43 S. E. 194, 61 L. R. A. 129, 99 Am. St. Rep.
855. The case of *Healy Lumber Co. v. Morris,* 33 Wash.
490, 74 P. 681, 63 L. R. A. 820, 99 Am. St. Rep. 964, holds
that a public use must be either a use by the public or by
some *quasi* public agency, and not simply a use which may
incidentally or indirectly promote the public interest or gen-
eral prosperity."

That holding was recently reaffirmed in *Bookhart v. Cen-
tral Elec. Power Co-op.,* 219 S. C. 414, 65 S. E. (2d) 781,
788, from the opinion in which the following is quoted:

"Appellant attacked in argument the authority of *Boyd v.
Winnsboro Granite Co.,* 66 S. C. 433, 45 S. E. 10, and with
the criticism we are inclined to agree. However, the state-
ment of the rule there was tempered in the subsequent deci-
sion of *Riley v. Charleston Union Station Co., supra,* 71 S.
C. 457, 51 S. E. 485, 110 Am. St. Rep. 579, which was a
well-considered case, and the apparently generally abandoned
theory of 'public benefit' as justifying the exercise of the
power of eminent domain was not followed; nor do we need

to follow it here, if we were so disposed. Public benefit and public use are not synonymous in the better and more clearly constitutional view. We think that the latter (public use) is necessary for the constitutional exercise of the power of eminent domain."

The issue now at hand was not presented in *McNulty v. Owens, supra,* 188 S. C. 377, 199 S. E. 425, 430, where it was held and said: "* * * the Columbia Housing Authority may exercise the power of eminent domain if that power be necessary in acquiring property for slum clearance or low-cost housing * * *."

Discussions of the divergent views of the courts of other jurisdictions of the meaning of the term, "public use", are found in 29 C. J. S., Eminent Domain, § 31 *et seq.,* p. 823 *et seq.,* and in 18 Am. Jur. 660 *et seq.,* Eminent Domain, sec. 36 *et seq.*

Some of the decisions of other courts immediately in point that are contrary to our view, which are not distinguishable upon different constitutional provisions or former judicial interpretations, proceed upon the theory that a public use is accomplished by the seizure and destruction of slum or "blighted" areas and the disposition of the land thereafter to private owners for private purposes is merely incidental. We think that this would be a strained view of the facts in the case *sub judice,* and we cannot follow it. The purpose here is not to provide better, low-cost housing to the present occupants of the area, or indeed any housing at all; but is to transform it from a predominantly low-class residential area to a commercial and industrial area. It seems to us to be a grandiose plan which cannot be dissected and the result of it reasonably said to be incidental. However desirable the object is from a municipal planning viewpoint, it cannot be attained by exercise of the power of eminent domain. Other contrary decisions hold that restrictions upon the future use of "redeveloped" land is a public use; but that is in the nature of zoning, which derives from the police power. ·

*Schneider v. District of Columbia,* D. C. 1953, 117 F. Supp. 705, 720, is a well-reasoned, exhaustive decision by a three-judge federal court. It upheld the redevelopment law of Congress for the District of Columbia and the employment of the power of eminent domain, but only so far as necessary to condemn slum housing. The following are excerpts from the opinion:

"* * * most certainly the Government has not an unrestricted power to seize one man's property and sell it to another for the building of a factory or a store. * * *

"The Government cites the recent redevelopment cases in the state and federal courts. The state cases are far too numerous to discuss in detail, but study shows that they deal with low-cost housing projects, with solutions for acute conditions affecting some major feature of the life of the city, or with slum clearance alone. * * *

"Of course the plan as pictured in the prospectus is attractive. In all probability it would enhance the beauty and the livability of the area. If undertaken by private persons the project would be most laudable. It would be difficult to think of a village, town or city in the United States which a group of artists, architects and builders could not improve vastly if they could tear down the whole community and rebuild the whole of it. But as yet the courts have not come to call such pleasant accomplishments a public purpose which validates Government seizure of private property. The claim of Government power for such purposes runs squarely into the right of the individual to own property and to use it as he pleases. Absent impingement upon rights of others, and absent public use or compelling public necessity for the property, the individual's right is superior to all rights of the Government and is impregnable to the efforts of government to seize it. That the individual is in a low-income group or in a high-income group or falls in the middle of the groups is wholly immaterial. One man's land cannot be seized by the Government and sold to another man merely in order that the purchaser may build upon it a better house or a house

which better meets the Government's idea of what is appropriate or well-designed.

"We hold that Congress did not in the Redevelopment Act confer power to seize property beyond the reasonable necessities of slum clearance and prevention, the word 'slum' meaning conditions injurious to the public health, safety, morals and welfare."

Upon appeal of the last cited case, then entitled *Berman v. Parker,* 348 U. S. 26, 75 S. Ct. 98, 102, 99 L. Ed. 27, the Supreme Court modified and expanded the decision of the trial court, and held that redevelopment by Congress and its agencies for the District of Columbia was an exercise of its police power and eminent domain merely the means to the end. Public use in our accepted constitutional sense was not considered by the court as an essential of the exercise of the power of eminent domain, which is illustrated by the following extract from the opinion by Mr. Justice Douglas:

"The concept of the public welfare is broad and inclusive. * * * The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled. In the present case, the Congress and its authorized agencies have made determinations that take into account a wide variety of values. It is not for us to reappraise them. If those who govern the District of Columbia decide that the Nation's Capital should be beautiful as well as sanitary, there is nothing in the Fifth Amendment that stands in the way."

Contrary to the foregoing quotation, it was held in *Pennsylvania Mut. Life Ins. Co. v. City of Philadelphia,* 242 Pa. 47, 88 A. 904, 49 L. R. A., N. S., 1062, that an act was unconstitutional which authorized cities to acquire properties adjoining a parkway and then resell them subject to building restrictions, because the purpose was to beautify the parkway and aesthetic objectives are not sufficient to justify the exercise of the power of eminent domain *Berman v. Parker* is the

subject of a critical article in the June 1955 issue of the American Bar Association Journal.

In reaching the foregoing conclusion we are not unmindful of the deference to which the legislative findings, which are contained in the Redevelopment Law, are entitled; section 36-403(4) declares that the acquisition of private property for a redevelopment plan is a public ·use, and section 36-406 undertakes to delegate to a housing authority the power of eminent domain therefor. However, what is a public use is ultimately a judicial question and, when contested, is the responsibility of the court to decide; this is so long and well-settled that the citation of supporting authority is unnecessary.

Likewise, it is elementary that the court will not adjudge an act of the legislature to be in violation of the constitution, and therefore invalid, unless it is found to be so beyond a reasonable doubt. The court is in no doubt of the unconstitutionality of the exercise of the power of eminent domain for the execution of the redevelopment plan which is before us in the case at bar. It might, of course, be authorized by an enabling amendment of the constitution, Art. XVI, which is the course that has been followed in some other states, as is pointed out above in the citation of the decisions of their courts.

The Corporation Counsel of the City of Charleston filed a brief for affirmance, *amicus curiae,* with the permission of the court, which has received due consideration.

The judgment is reversed except insofar as it affects the land which will be conveyed to the University of South Carolina, as to which it is affirmed; and the case is remanded for any further appropriate proceedings which are not inconsistent with the views which have been expressed in this opinion.

TAYLOR and LEGGE, JJ., and G. BADGER BAKER, and J. M. BRAILSFORD, J., Acting Associate Justices, concur.

OXNER, J., not participating.