## 18170

The TUOMEY HOSPITAL, Respondent, v. The CITY OF SUMTER, Clifton G. Brown, as Mayor, and James Cuttino, James D. Harrelson, M. D. Mazursky and Robert D. Palmer, as Councilmen, constituting the City Council of said City of Sumter, Appellants.

(134 S. E. (2d) 744)

*C. M. Edmunds, Esq.,* of Sumter, *for Appellants,*

*Messrs. R. Kirk McLeod* and *John D. Lee, Jr.,* of Sumter, *for Respondent,*

February 13, 1964.

TAYLOR, Chief Justice.

Respondent commenced this action seeking an injunction against Appellants to restrain them from condemning lands owned by Respondent in the City of Sumter. The Honorable James Hugh McFaddin issued a rule to show cause why Appellants should not be enjoined and restrained from proceeding with the condemnation proceeding.

Appellants in due time demurred to the complaint and filed its answer and return. After hearing, Judge McFaddin, by his Order of May 20, 1963, overruled the demurrer and granted a temporary injunction *pendente lite*.

The complaint alleges that Respondent, The Tuomey Hospital, is an eleemosynary corporation created and existing under the laws of this State to conduct, operate and maintain a charitable hospital under and in accordance with the terms and provisions of the Will of the late Timothy J. Tuomey and that said corporation has been conducting such nonprofit hospital for nearly 50 years. Respondent owns the property between Calhoun and Canal Streets on Sumter Street and the entire plant of said hospital is located thereon. The City of Sumter, a municipal corporation, proposes to acquire by condemnation a strip of land ranging from 10-14 feet in width and extending the entire block of Sumter Street between Calhoun and Canal Streets as a right of way for the purpose of widening Sumter Street. Respondent further alleges that the action of Appellants in commencing such condemnation proceedings is arbitrary, capricious, dictatorial, unreasonable and entirely unnecessary and is in violation of the statute law of this State in that as the property sought to be condemned is devoted to a public use and the City of Sumter has no power of condemnation of the same; further that the proposed widening of Sumter Street would cause Respondent irreparable damage in the proper conduct and operation of its hospital facilities as the taking of the property in question would

result in the street being located too close to Respondent's new hospital building completed in early 1963. The complaint also alleges that Respondent has no adequate remedy at law and cannot be compensated in damages and that unless Appellants are restrained and enjoined from condemning its property, Respondent will suffer irreparable injury and damage.

Appellants demurred to the complaint on the ground that it contains no facts or allegations sufficient to state a cause of action in that it does not contain factual allegations showing any gross arbitrary or capricious action on the part of the governing body of the City of Sumter, neither does it allege bad faith or abuse of discretion on the part of Appellants in commencing the condemnation proceedings; further that Respondent has an adequate remedy at law; that the allegation in the complaint to the effect that the land of Respondent is devoted to a public use is merely a legal conclusion; and that Appellants have statutory authority to condemn Respondent's property.

The power of eminent domain is an inherent and necessary attribute of the State, *Paris Mountain Water Co. v. City of Greenville,* 110 S. C. 36, 96 S. E. 545. Although municipal corporations have no inherent right of eminent domain, the State, through the Legislature, may delegate the right to exercise the power of eminent domain to a municipal corporation, *Smith v. City of Greenville,* 229 S. C. 252, 92 S. E. (2d) 639. The legislative grant of the power of eminent domain must be strictly construed for the protection of property rights, *Paris Mountain Water Co. v. City of Greenville,* 105 S. C. 180, 89 S. E. 225, 226.

When the right to institute condemnation proceedings is contested in this State, the proper remedy is for the landowner to bring an action in the Court of Common Pleas, as was done here, in order for the Court, in the exercise of its chancery power, to determine such right. *Seabrook v. Carolina Power and Light Co. et al.,*

159 S. C. 1, 156 S. E. 1; *Greenwood County v. Watkins,* 196 S. C. 51, 12 S. E. (2d) 545; *Sease v. City of Spartanburg,* 242 S. C. 520, 131 S. E. (2d) 683.

The general rule, as stated in 29 C. J. S., Eminent Domain, § 74, p. 861, is that " * * * property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in such case insufficient; * * *.

"The rule that power to take property devoted to a public use must be conferred expressly or by necessary implication applies only where the second use will destroy or injure the use to which the land was originally appropriated. So, in the absence of some statutory provision expressly or by implication forbidding it, property devoted to one public use may under general statutory authority be taken for another public use, where the taking will not materially impair or interfere with or is not inconsistent with the use already existing, and is not detrimental to the public. It is not material that some inconvenience may result to the prior occupant, if the conditions are such that the two uses can stand together."

In *Riley v. South Carolina State Highway Department,* 238 S. C. 19, 118 S. E. (2d) 809, it was pointed out that the rule generally stated above applies to a municipality and that the general grant of the power of eminent domain to a municipality is usually insufficient to authorize taking of land already devoted to a public use as "such authority must be given by the Legislature in express terms or by necessary implication." Municipal corporations are given the power of condemnation by Section 47-68.1, Code of Laws of South Carolina, 1962, which reads as follows:

"Power of condemnation.—Any municipal corporation desiring to become the owner of any land or to acquire any

easement or right of way therein for any corporate or public purpose shall have the right to condemn such land or right of way or easement, within and without the corporate limits of that municipality, in the county in which it is situate and in any adjoining county or counties. *This section shall not apply to any property owned by public service corporations or devoted to public use."* (Emphasis added.)

Appellants allege Section 47-68.1 has in effect been superseded or repealed by subsequent legislation. Sections 25-161 through 25-170 referred to by Appellants in no way broadens the basic power of condemnation granted municipalities as such sections simply revised the procedure for condemnation by municipalities by implementing Art. I, Section 17 of the South Carolina Constitution to provide a method of ascertaining the amount of just compensation to which a landowner is entitled by reason of the taking of his property by a municipality. *Smith v. City of Greenville,* 229 S. C. 252, 92 S. E. (2d) 639.

Section 47-68.1 is the statutory authority for the exercise of the power of eminent domain by municipalities. It grants to municipalities in general terms the power of condemnation; however, "property owned by public service corporations or devoted to public use" is specifically excepted. Therefore, if the property of the Tuomey Hospital is devoted to public use, the City of Sumter is without power to acquire it by condemnation.

The Tuomey Hospital is alleged to be an eleemosynary corporation operating a charitable hospital in accordance with the terms and provisions of the Will of the late Timothy J. Tuomey, and that the property owned by such hospital is devoted to a public use. While the demurrer admits the facts well pleaded in the complaint, it does not admit conclusions of law or inferences drawn by the plaintiff from the facts. *Sease v. City of Spartanburg,* 242 S. C. 520, 131 S. E. (2d) 683. The allegation in the complaint that the hospital was devoted to public use is clearly an inference drawn by the pleader from the facts, if

not a conclusion of law, and, as such, was not admitted by the demurrer.

We recognize that it is difficult to give an accurate and comprehensive definition of the term "public use." The distinction between public and private use lies in the character of the use and must to a large extent depend upon the facts of each case. There are, however, certain essential characteristics which must be present if the use is to be deemed public and not private within the meaning of the law of eminent domain.

This Court has rejected the view that public use and public benefit are synonymous. *Riley v. Charleston Union Station Co.*, 71 S. C. 457, 51 S. E. 485; *Bookhart v. Central Electric Power Co.*, 219 S. C. 414, 65 S. E. (2d) 781; *Edens v. City of Columbia*, 228 S. C. 563, 91 S. E. (2d) 280.

The fact that the Tuomey Hospital is an elemosynary corporation devoted to charitable purposes does not within itself constitute a public use within the meaning of the foregoing statute. Mere benefit to the public or permission by the owner for use of the property by the public are not enough to constitute a public use, but it must appear that the public has an enforceable right to a definite and fixed use of the property. 29 C. J. S., Eminent Domain, § 31; 18 Am. Jur. 720, Section 94. The rule was recognized in the *Riley case* that to constitute a public use "the public must have a definite and fixed use of the property to be condemned, independent of the will of the person or corporation taking title under condemnation, and that such use by the public is protected by law."

The general rule, to which we adhere, was thus stated in the case of the *President and Fellows of Middlebury College v. Central Power Corporation of Vermont*, 101 Vt. 325, 143 A. 384, 388: "It is essential to a public use, as the term is used in proceedings involving the law of condemnation or eminent domain, that the public must, to some extent, be entitled to use or enjoy the

property, not by favor, but as a matter of right. *Rut. Ry. Co. v. Clarendon Power Co., supra,* 86 Vt. page 53, 83 A. 332, 44 L. R. A. (N. S.) 1204; *Paine v. Savage,* 126 Me. 121, 136 A. 664, 666, 51 A. L. R. 1194; *Fountain Park Co. v. Hensler et al.* (Ind.) 155 N. E. 465, 470, 50 A. L. R. 1518. 'The test whether a use is public or not is whether a public trust is imposed upon the property, whether the public has a legal right to the use, which cannot be gainsaid or denied, or withdrawn at the pleasure of the owner.' *Arnsperger v. Crawford,* 101 Md. 247, 253, 61 A. 413, 415 (70 L. R. A. 497); *Twelfth St. Market Co. v. R. Co.,* 142 Pa. 580, 21 A. 902, 989, 990."

While the question of whether the complaint alleges ▆ a public use of the property involved is a close one, we think that under a liberal construction thereof, the question of public use is a factual issue which must be resolved, in the light of the foregoing principles, under the facts as developed upon the trial of the case. For the foregoing reasons, therefore, we are of opinion that the demurrer was properly overruled, that the order appealed from should be affirmed and it is so ordered.

Affirmed.

Moss, LEWIS, BUSSEY and BRAILSFORD, JJ., concur.