**GREATER CLARK COUNTY SCHOOL CORPORATION, Appellant (Plaintiff below),**

v.

**PUBLIC SERVICE COMPANY, INDIANA, INC., Appellee (Defendant below),**

**and**

**The Town of Clarksville, Clark County, Indiana, Appellee (Defendant below).**

**No. 1-378A65.**

Court of Appeals of Indiana, First District.

Feb. 5, 1979.

Jack B. Risinger, Charlestown, Snyder & Clary, William M. Clary, Jr., Howard J. Snyder, Jeffersonville, for appellant.

John W. Doehrman, Jeffersonville, for appellee the town of Clarksville, Clark County, Indiana.

Ronald J. Brothers, Plainfield, Ernest W. Smith, Jeffersonville, Frank T. Lewis, Plainfield, for appellee Public Service Co., Indiana, Inc.

ROBERTSON, Judge.

The Greater Clark County School Corporation (School Corporation) appeals an adverse decision in its condemnation suit rendered by the trial court in favor of defendants-appellees Public Service Co., Indiana, Inc. (PSI) and the Town of Clarksville, Clark County (Town).

In affirming, we decide only one issue and that is whether the School Corporation is prohibited under the prior public use doctrine from condemning the land in question.

A recitation of the facts is essential to understanding the issue involved in this case. The School Corporation had been leasing a parcel of land from PSI from at least 1958 until the summer of 1976. The parcel is situated between McCulloch Elementary School in Clarksville and a PSI plant. The elementary school used the land as part of its playground.

For some years prior to the institution of this condemnation action in June of 1976, there were plans generally known in the community to use part of this leased parcel to relocate and improve a road intersection of Triangle Drive which was considered dangerous. These plans were known and discussed by the School Corporation Board in its meetings. The proposed action concerned the Board because it would further reduce the already limited playground of the school and because the proximity of the new road would raise safety problems for the children. Public hearings were held concerning the relocation plan after which apparently the State and Federal Highway Commissions backed off from the project due to adverse comment. However, there was some indication to the School Corporation Board that the Town was proceeding alone with the project. No formal action was taken by the Board, as evidenced by its minutes, until May 10, 1976, when the Board directed its attorney to contact PSI regarding purchase of the property, "and to take whatever action was necessary to try to stop the proposed relocation of Triangle Drive." The use of an injunction or condemnation suit was discussed in the meeting. An order for a survey of the land was also passed by the Board.

Pursuant to the School Corporation Board decision, the Board's attorney wrote to a PSI official to request a meeting concerning purchase of the leased land. The representative of PSI responded by letter dated June 3, 1976, that the PSI board of directors had adopted a resolution authorizing and directing its officers to transfer the leased land to the Town, and that in fact the land had already been transferred to the Town. In the letter, the PSI official further served notice that PSI was exercising their right to terminate the lease in 60 days.

Apparently not satisfied, the School Corporation examined the county records and found that only one part of the leased land, Parcel A, had been conveyed. Parcel A is directly on the school boundary. The School Corporation on June 8, 1976, then commenced this condemnation action against Parcels B and C, the remaining part of the formerly leased land. Parcel B, the actual planned site of the new roadway, was conveyed to the Town by PSI after the action was commenced. The Town was then added as a co-defendant to the suit. Parcel C is still held by PSI.

The case proceeded to bench trial. At the close of plaintiff's evidence, the defendants moved for involuntary dismissal pursuant to Ind. Rules of Procedure, Trial Rule 41(B). The court took the motion under advisement and defendant PSI presented its case.

The Town did not present any evidence. Relying on a 1957 Indiana Supreme Court decision, *Cemetery Company v. Warren School Township of Marion County*, (1957) 236 Ind. 171, 139 N.E.2d 538, and the evidence presented, the trial court then granted the TR. 41(B) motion.[1]

The School Corporation appeals on two grounds. However, because of our disposition, we need discuss only whether the prior public use doctrine as enunciated in *Cemetery Company v. Warren School, supra*, is applicable in this case.

1 Nichols, The Law of Eminent Domain, §§ 2.2, 2–57, (Rev. 3rd ed. 1973) states the prior public use rule as:

> [A] condemnor to whom the power of eminent domain has been delegated, such as a municipality or a private corporation, seeks to exercise the power with respect to property already devoted to public use, the general rule is that where the proposed use will either destroy such existing use or interfere with it to such an extent as is tantamount to destruction, the exercise of the power will be denied unless the legislature has authorized the acquisition either expressly or by necessary implication.

In *Cemetery Company v. Warren School*, the court discussed the rationale behind the rule. In that case, the School Township, which was under the same eminent domain statutes as were in effect in 1976,[2] attempted to condemn land already dedicated to public use by the Cemetery Company. The statutes established no priority and both parties had essentially the same power to condemn; thus, the court noted, absent the prior public use rule, the land could be condemned back and forth indefinitely. The court observed that "[t]he logical implication would be that there is no secure or permanent dedication to any public use." *Id.* at 185, 139 N.E.2d at 544.

A further reason was given by the court for the prior public use doctrine:

To us the determination of the relative values and importance of different public uses, one of which will be inconsistent with or destroy another is purely a legislative matter—one of policy to be determined in the legislative halls and not in the court room. To assume such a task would embroil the courts in a confusing administrative and legislative function differing but little in character from that of determining what are reasonable rates to be charged by a utility. [citations omitted.]

236 Ind. at 187, 139 N.E.2d at 545.

In the case at bar, there are not two, but three entities with essentially the same power of condemnation. However, we can narrow the issue by determining that PSI has no claim under the prior public use doctrine. 1 Nichols, *supra*, § 2.2, 2–66, 2–67, states the exception:

> Where, however, land is held for the public use, *but is not actually so used or needed*, it has been held that it is subject to condemnation like the property of private individuals in that it may be taken under general legislative authority without finding a special intent to authorize taking of public property. [Emphasis added.]

Before selling the land to the Town, PSI had leased the land to the School Corporation for at least 18 years, and plans for future development of the land by PSI do not appear from the record.

The remaining question before us is whether the Town had proceeded far enough in the process of acquiring the land for public use so as to invoke the prior public doctrine against the School Corporation. Direct authority is sparse, but Nichols does comment with regard to competing corporations both having a power of condemnation:

---

1. The parties do not raise an issue concerning this procedure, and we therefore opine only that we do not read TR. 41(B) as prescribing such a procedure to which the parties and court below apparently ascribed.

2. *Ind.Code* 20–5–23–1, *et seq.* and IC 32–11–1–1, *et seq.*

Ordinarily, a corporation cannot by purchasing the land in controversy from the owners, secure priority over another corporation which has instituted proceedings to take the property by eminent domain, but, *if the statutes require an attempt to purchase before proceedings are instituted, a corporation which has secured the land by negotiations with the owner will be protected from an attempt to condemn the land by another corporation.* [Emphasis added.]

Nichols, §§ 2.2[5], 2–91, 2–92.[3]

As the Town and the School Corporation are on the same footing as two competing corporations with power of condemnation in the sense that neither has priority, and since both must attempt to purchase before condemning, we believe the same rule should apply here.

The evidence shows that the Town had been publicly planning the roadway for some time and that the School Board was aware of it; that, after negotiations, the PSI Board had authorized and directed its officers to convey the property; that in fact part of the land had been transferred before condemnation proceedings were brought and that the rest of the land was on the verge of transfer. The condemnation action by the School Corporation was explicitly an attempt to thwart what was already in the process of being finalized. The rationale behind the prior public use doctrine is applicable to the facts of this case.[4]

We hold that the Town's actions had proceeded to the point of having dedicated the land to a public use, and, thus, the prior public use doctrine applies against the School Corporation.

Affirmed.

LYBROOK, P. J., and LOWDERMILK, J., concur.

---

3. See also 12 A.L.R. 1502 (1921), 1509: "Some cases treat the rights of a public service corporation about to appropriate lands to a public use the same as if the lands had been actually appropriated." (Citations omitted.)

4. We distinguish *Indianapolis Power & Light Co. v. Barnard*, (1978) Ind.App., 371 N.E.2d 408, because that case involved a person's attempt to dedicate his *own* private land to public use by certification of the Aeronautics Commission. The contemplated public use in *Barnard*, however, was significantly less imminent than that presented by the facts at bar.