21923

BLUE RIDGE ELECTRIC COOPERATIVE, Respondent, v. The COMBINED UTILITY SYSTEM OF the CITY OF EASLEY, South Carolina, Appellant.

(303 S. E. (2d) 91)

*J. D. Todd, Jr.*, of *Leatherwood, Walker, Todd & Mann*, of Greenville, and *Felix L. Finley, Jr.*, of *Finley, Ponder & Warlick*, of Pickens, *for appellant.*

*Henry F. Floyd*, of *Acker, Acker, Floyd & Welmaker*, of Pickens, *for respondent.*

*John W. Thomas*, of *Dial, Jennings, Windham & Thomas*, of Columbia, for *S. C. Elec. Co-op. Ass'n, Inc., amicus curiae.*

May 11, 1983.

GREGORY, Justice:

This declaratory judgment action was brought by respondent Blue Ridge Electric Cooperative (Blue Ridge) to determine the constitutionality of S. C. Code Ann. § 58-27-1360 (1976) which pertains to the acquisition of facilities and properties of a supplier of electricity by a city or town or with the consent of the governing body of the city of town, an electrical utility furnishing electricity in such city or town pursuant to a franchise, contract, permit, or other consent when the service area of the supplier of electricity is incorporated as a city or town or is annexed to an existing city or town. We affirm.

The City of Easley owns and operates the Combined Utility System of the City of Easley (Combined Utility System), appellant. Prior to April 11, 1979, Blue Ridge supplied electricity to an area near Easley known as Five Forks. On April 11, 1979, a two hundred (200) acre portion of Five Forks was annexed to Easley.

At that time, Blue Ridge served only one customer in the annexed area, but served many customers in the areas to the north and south of the annexed area. Connecting the north and south areas was a 4,817 foot electric transmission line traversing the annexed area.

Upon receiving a resolution of Combined Utility System and the City of Easley whereby they determined to serve electricity to the annexed area, Blue Ridge sought, pursuant to § 58-27-1360 of the Code, to compel Combined Utility System to purchase all of its facilities and properties within the annexed area, including the 4,817 foot transmission line.

The parties appointed representatives to negotiate the sale and transfer of respondent's facilities. The representatives were unable to reach an agreement as to just compensation. This action was then brought.

Appellant contended Blue Ridge should continue using the 4,817 foot transmission line because it was the best method for serving Blue Ridge's area to the south of the annexed area. Appellant offered to purchase the line and lease it back to respondent at no cost.

Respondent did not agree to this no-cost lease back. It contended § 58-27-1360 required appellant to purchase its line. Thus, respondent's line would have to be reintegrated and a line constructed around the annexed area for some

31,000 feet. The trial judge agreed that § 58-27-1360 was mandatory and required appellant to purchase respondent's line; however, he made no finding as to whether respondent's line would have to be reintegrated and constructed around the annexed area.

Appellant contends requiring it to take more than it needs constitutes a denial of due process, and asserts the trial judge should have ruled that the arbiter could make no award for reintegration of respondent's system. We disagree.

The clear language of § 58-27-1360 dictates "such supplier of electricity in the annexed or incorporated area shall have the right to compel such city or town or an electrical utility operating therein . . . to purchase such facilities and properties and to compel the payment of just compensation therefor. . . ." We believe the legislative intent was to balance the rights and powers of cities and towns to expand their areas and provide services to those areas against the interest and property rights of suppliers of electricity, including the cooperatives. The Legislature, through § 58-27-1360, recognizes the value of services provided over the years by the cooperatives and the significant role they have played in rural South Carolina.

§ 58-27-1360 serves to protect cooperatives from becoming completely useless. Were a city or town allowed to expand its territory and services virtually at its desire and pay only for those facilities it decides are advantageous for it to take, cooperatives would face losing future as well as present revenue and would forfeit existing as well as potential customers. As respondent stated at oral argument, this may cause the city to rethink whether it wants to annex or incorporate an area. And, in cases as this, where the annexed area is rapidly developing and the cooperative is losing the right to serve that area, the city might be required to purchase all of the facilities in the annexed area, upon the electric supplier's request. It is the arbiter's duty to make the decision and he may reject any proposal he deems unreasonable.

Next, respondent contended the statutory formula provided in § 58-27-1360 to compute just compensation was an unconstitutional exercise of the legislative authority of the General Assembly to define just compensation,

and the definition denied respondent equal protection of law since the term was not defined in any other condemnation proceeding. The trial judge held the statutory formula was constitutional so long as it was construed as a minimum, not a limitation, on what factors the arbiter could use to determine just compensation. Appellant excepted to this holding.

The purpose of payment of just compensation is to put the condemnee in as good a position pecuniarily as he would have been had his property not been taken.

The method of ascertaining just compensation is left for legislative determination. *See South Carolina State Highway Dept. v. Southern Ry. Co.*, 239 S. C. 1, 121 S. E. (2d) 236 (1961); *Chick Springs Water Co. v. State Highway Department*, 159 S. C. 481, 157 S. E. 842 (1931).

"While the Legislature may fix the procedure to be followed in asserting a claim for compensation, it may not impair or deny an essential element thereof." *South Carolina State Highway Dept. v. Southern Ry. Co.*, 239 S. C. 1, 121 S. E. (2d) at 240 (Oxner, J., dissenting); *See also Chick Springs Water Co. v. State Highway Department, supra.* We find no error.

Next, both appellant and respondent requested the trial judge to instruct the arbiter with respect to the formula to determine just compensation. However, appellant requested the trial judge to determine what facilities of respondent it was required to acquire and then to instruct the arbiter as to what elements of compensation respondent was entitled to receive. The trial judge found that instructing the arbiter *as appellant requested* would constitute a denial of arbitration.

To do as appellant requests would require the trial judge to hold a hearing on the merits to determine what facilities appellant must acquire. The arbiter would then be little more than an adding machine. This would frustrate the plain language of § 58-27-1360 which provides that an arbiter shall make a decision on just compensation. We find no error.

Finally, both parties request guidance from this Court as to the method of review of the arbiter's decision.

Both parties submit a trial *de novo* is the most practical, fair and preferable form of review. A declaratory judgment action must involve an actual, justiciable controversy. This issue does not. Thus, we dismiss this exception as it seeks

merely an advisory opinion. *Bitter v. South Carolina Employment Security Commission*, 276 S. C. 493, 280 S. E. (2d) 60 (1981); *Booth v. Grissom*, 265 S. C. 190, 217 S. E. (2d) 223 (1975); *O'Shields v. McLeod*, 257 S. C. 477, 186 S. E. (2d) 408 (1972).

Accordingly, we affirm.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and HARWELL, JJ., concur in separate opinion.

LITTLEJOHN, Justice (concurring):

I am in basic accord with the opinion of Justice Gregory, but I think it appropriate to comment upon a proper construction of the acquisition statute, § 58-27-1360. This statute gives to Combined Utility System "... the right at any time thereafter to acquire, upon payment of just compensation therefor, the facilities and properties of the supplier of electricity [Blue Ridge] in the annexed or incorporated area situate within the limits of the municipality ..." It goes further and provides that the "... supplier of electricity [Blue Ridge] in the annexed or incorporated area shall have the right to compel such city ... to purchase such facilities and properties and to compel the payment of just compensation therefor; ..." It is a right-of-condemnation statute with a double aspect.

The Constitution of South Carolina, Article I, § 13, provides: "... private property shall not be taken ... for public use without just compensation being first made therefor." Normally, property already in public use may not be condemned by another public entity. *Tuomey Hospital v. City of Sumter*, 243 S. C. 544, 134 S. E. (2d) 744 (1964). The statute modifies this rule, in effect, making it possible for either the condemnor or the condemnee to initiate a taking for a different public use. The statute is permissive and neither the annexing municipality nor the supplier of electricity is required to trigger its usefulness.

As indicated above, rights granted under the statute are akin to the right of condemnation. The right to condemn may not be arbitrarily used and I am not at all sure that either party may arbitrarily use rights granted by the statute even though at first blush the statute would appear to give to either party an unlimited right to force a sale. Efforts to condemn

property may be enjoined by a court of equity if exercise of the right is not truly needed to promote a public purpose. *Seabrook v. Carolina Power and Light Company*, 159 S. C. 1, 156 S. E. 1 (1931). Whether Blue Ridge can show good reason for the exercise of the statutory authority is not a question momentarily before this Court.

The problem which must be solved arises by reason of the unusual facts involved. Normally, a newly annexed area would have many electricity customers and the electric lines and other properties of the original supplier would be of considerable value to the annexing municipality. Here, we have only one consumer and the to-be-acquired properties are, with few changes and alterations, of substantial value to Blue Ridge. I do not read into the statute an intent on the part of the legislature to require the result for which Blue Ridge argues. Both Blue Ridge and Combined Utility System were created to serve the people of their respective groups. Blue Ridge contends that Combined Utility System should be required to buy its line of a little less than one mile (4,817 feet), and that Combined Utility System should be required to construct a new line almost six miles long (31,000 feet) to take its place at an expense of well over two hundred thousand dollars.

There has been filed with this Court an *Amicus Curiae* brief on behalf of the South Carolina Electric Cooperative Association, Inc. The real reason for requiring Combined Utility System to buy these properties may be gleaned from this brief, which states:

> The intention of the General Assembly, as inferred from the provisions of § 58-27-1360, is to require the municipalities to think long and hard, prior to annexation or incorporation of an area, about the financial impact on the municipality should it elect to oust an electric supplier from a given area.

I do not agree with the intent attributed to the General Assembly, but it is inferable that Blue Ridge would impose upon Combined Utility System a burden it can ill afford in order to gain advantage to itself not necessarily consistent with serving its own customers well. The rights of both the people in the annexed area and the people in the municipality

to annex are superior to the right of Blue Ridge to sell electricity.

The *Amicus Curiae* brief recognizes:

> While an arbiter might disallow a particular plan or proposal of reintegration on the grounds that such plan or proposal was "unreasonable" or would result in "unjust" compensation, a reasonable or "just" proposal of reintegration, in any event, must be considered and allowed.

In the last analysis, the arbiters will be permitted to reject any plan or proposal which is unreasonable. If they find the most reasonable solution to the problem is that Blue Ridge retain its properties and continue to serve its customers with the facilities it erected when there was no conflict existing, they may reject others. The statute certainly does not grant to Blue Ridge the sole right to determine how its lines shall be reintegrated.

It is common knowledge that the municipalities and the cooperatives have been in substantial dispute and conflict for many years relative to annexations and the right to serve "annexed" customers.

The problems with which the arbiters must deal in this case are novel. The litigation has been in contest nearly four years already. If an additional appeal is involved, there will be no final determination for at least four or five additional years. In an effort to provide the arbiters with some guidance, I deem it a disservice to remand without comment on the statute.

LEWIS, C. J., and NESS and HARWELL, JJ., concur.