586 S.E.2d 853

**GEORGIA DEPARTMENT OF TRANSPORTATION,**
an agency of the State of Georgia, Appellant,

v.

**JASPER COUNTY, South Carolina, Respondent.**

No. 25714.

Supreme Court of South Carolina.

Heard June 25, 2003.
Decided Sept. 15, 2003.

632

Richard D. Bybee, of Smith, Bundy, Bybee & Barnett, of Mt. Pleasant;  Matthew E. Cline, of Atlanta, GA;  and David G. Pagliarini, of Daniel Island, for appellant.

Gedney M. Howe, III, of Charleston;  Darrell Thomas Johnson, Jr., of Hardeeville;  and Stephen A. Spitz, of Columbia, for respondent.

Justice MOORE:

Appellant Georgia Department of Transportation (GDOT) commenced this action under S.C.Code Ann. § 28–2–470 (1991) challenging respondent Jasper County's (County's) notice of intent to condemn 1,776 acres of undeveloped land owned by GDOT on the Savannah River.  The trial court found GDOT's challenge without merit.  We reverse.

## FACTS

The property to be condemned is presently used by GDOT to facilitate dredging activities in the Savannah River Harbor under local sponsor agreements with the U.S. Army Corps of Engineers (USACE).  County intends to condemn the land, then lease all but forty acres of it to a private stevedoring corporation, SAIT, a subsidiary of Stevedoring Services of America, Inc. (SSA).

On the leased property, SAIT will construct in phases a maritime terminal. The main terminal will occupy 1,000 acres, 130 acres will be used for an access road, and 646 acres will be set aside for "engineering purposes" including dredging disposal. The terminal will handle freight "of general public origin" and have the capacity to handle a half-million shipping containers annually. It will operate in conjunction with a business park County plans to develop on the forty remaining acres of the condemned property.

County's lease with SAIT has a ninety-nine-year term and is contingent on successful condemnation. SAIT may sublet the leased premises with County's approval. In lieu of rent, SSA will pay the compensation for the condemned property, which County originally offered GDOT in the amount of approximately $8.35 million.

## ISSUES

1. Does the condemnation violate the prior public use doctrine?
2. Is the use for which the property is being condemned a public use?

## DISCUSSION

### 1. Prior public use

Under S.C.Code Ann. § 4–9–30(4) (Supp.2002), a county may "exercise powers of eminent domain for county purposes except where the land is devoted to a public use." In bringing this action, GDOT claimed the property is presently put to public use, and therefore not subject to condemnation, because it is encumbered by use easements held by the USACE for dredge material containment areas. In ruling for County, the trial court found the dredging activity is merely an indirect benefit to the public and not "a public use." In the alternative, he found County's taking would not destroy the prior public use.

■■■■ Generally, the prior public use doctrine is applicable between entities with equally delegated powers of eminent domain. *See Florida East Coast Rwy. Co. v. City of Miami*, 372 So.2d 152 (Fla.App.1979); *Greater Clark County Sch.*

*Corp. v. Pub. Serv. Co., Indiana, Inc.,* 179 Ind.App. 331, 385 N.E.2d 952 (1979); *State v. Union County Park Comm'n,* 89 N.J.Super. 202, 214 A.2d 446 (Law Div.1965). The rationale is to prevent condemnation back and forth between competing condemnors. *Florida East Coast Rwy. Co., supra; Greater Clark County Sch. Corp., supra.* As stated by one court: "The doctrine of prior public use does not clothe the court with power to weigh the communal benefit of the proposed use against the present use of property sought to be condemned. It is, rather, a rule of law limited to controversies between two [entities] each possessing a delegated, general power of eminent domain." *Bd. of Educ. of Union Free Sch. Dist. No. 2 v. Pace College,* 27 A.D.2d 87, 276 N.Y.S.2d 162, 165–66 (2 Dept.1966). When the resisting landowner possesses no such power, the question does not arise. *Id.*[1]

■ Consistent with this line of cases, we conclude the prior public use doctrine should be limited to those cases involving competing condemnors. It is for the condemning entity to determine whether *privately* owned property, although presently used for public benefit, should be condemned for a competing public use. The difficulty of injecting the judicial branch into the arena of competing "public uses" is in fact demonstrated by the one case in which this Court attempted to apply the doctrine of prior public use. In *Tuomey Hosp. v. City of Sumter,* 243 S.C. 544, 134 S.E.2d 744 (1964), we addressed a condemnation by a municipality whose delegated power of eminent domain was subject to an exception for property previously "devoted to public use." The property to be condemned was a charitable hospital. We noted the difficulty of defining the term "public use:" mere benefit to the public is not enough; the public must have some "definite and fixed use" that is protected by law. Without deciding whether the use in question actually qualified as a "public use," we found it was a factual issue to be determined at trial.[2]

---

1. The doctrine of prior public use, if applicable, does not depend on whether the prior use was acquired by condemnation or purchase. *See New York Cent. & H. R.R. Co. v. City of Buffalo,* 200 N.Y. 113, 93 N.E. 520 (1910).

2. Analyzing a prior public use by evaluating the actual use to which the property is put is problematic because the term "public use" applies in

■ We hereby overrule *Tuomey* to the extent it allows application of the prior public use doctrine in situations other than between entities with equal powers of eminent domain. Here, although GDOT is an arm of a sovereign state, it has no power of eminent domain in South Carolina. Because GDOT is in the posture of a private landowner in this case, we decline to apply the doctrine of prior public use.

### 2. Use for which taken

■ Article I, § 13, of our State Constitution provides: Except as otherwise provided in this Constitution, private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor.

GDOT argues the condemnation is unconstitutional because the property is being taken for private and not public use. We agree.[3]

The trial court held that County's lease to SAIT for a marine terminal qualifies as a "public use" and therefore County's taking of GDOT's property is constitutionally permitted. He distinguished our decision in *Karesh v. City Council of City of Charleston,* 271 S.C. 339, 247 S.E.2d 342 (1978),

---

two steps of the analysis in condemnation cases: first, whether there is a *prior* "public use" which forbids the taking of such land; and second, as discussed below, whether the land taken is *taken* for "public use" as required under our State constitution. An expansive interpretation of "public use" under the prior public use prong may restrict condemnation and protect certain private property owners whose property use somehow benefits the public; conversely, however, such an interpretation results in *less* protection for the majority of property owners when applied in the second prong of the analysis—the purpose for which the land is taken—by allowing the condemning entity to more easily establish a public use to justify the condemnation. This tension is evident in *Tuomey* where we cited but did not strictly apply the definition of "public use" from earlier cases applying the term in the context of the second prong. *E.g., Riley v. Charleston Union Station Co.,* 71 S.C. 457, 51 S.E. 485 (1905).

3. An action challenging a condemnation under § 28–2–470 is considered one in equity because it essentially seeks to enjoin the condemnation. *Southern Dev. Land and Golf Co. v. South Carolina Pub. Serv. Auth.,* 305 S.C. 507, 409 S.E.2d 428 (Ct.App.1991), *aff'd as modified,* 311 S.C. 29, 426 S.E.2d 748 (1993). Accordingly, on review we take our own view of the preponderance of the evidence. *Id.*

which held unconstitutional the City of Charleston's condemnation of land to build and then lease a parking facility and convention center to a private corporation. The trial court found the condemnation here distinguishable because the public interest is protected by federal law and regulation, referencing the lease provisions regarding the application of general maritime laws, and by County's control of the premises as landlord.

*Karesh* is controlling here. In *Karesh,* the parking facility was to be made available on reasonable demand to all members of the general public with only 10% reserved for the proposed convention center. We found this public interest was not enough in the context of a condemnation proceeding because private property rights were being infringed. Our decision in *Karesh* turned on the fact that the parking garage and convention center, which were "ostensibly public facilities," were to be leased long-term to the developer and used as an adjunct to the developer's own business. The importance of this fact is apparent from our subsequent decision in *Goldberg v. City Council of City of Charleston,* 273 S.C. 140, 254 S.E.2d 803 (1979), which addressed a later challenge to the revised project involving the same parking garage. In *Goldberg,* we summarily found the project no longer suffered the same constitutional impediments found in *Karesh* and was valid because the city would now own and operate the parking garage. General regulations governing the lease here and the standard landlord control provisions included in the lease do not rise to the level of public control required under *Karesh.*

Further, the trial court found the projected industrial development and economic benefit to the citizens of the county was sufficient to constitute a public use. Facts introduced at trial indicate the majority of County's population have low-paying tourist and service industry jobs and 25% live below the poverty line. The proposed project would be valued at approximately $400 million by the time it is completed, about 40% of County's current tax base. Projected tax revenues under a fee-in-lieu of tax agreement are between $3.5 and $4 million. The project would also diversify County's job base.

The cases relied on by the trial court in finding economic benefit is a sufficient public use, however, are not condemna-

tion cases but tax cases[4] and bond revenue cases.[5] The "public purpose" discussed in these cases is not the same as a "public use," a term that is narrowly defined in the context of condemnation proceedings. *Edens v. City of Columbia,* 228 S.C. 563, 573, 91 S.E.2d 280, 283 (1956). Although the projected economic benefit to County is very attractive, it cannot justify condemnation in this case. As stated in *Karesh:* "However attractive the proposed [project], however desirable the project from a [government] planning point of view, the use of the power of eminent domain for such purposes runs squarely into the right of an individual to own property and use it as he pleases." 271 S.C. at 344–45, 247 S.E.2d at 345.

▉▉▉ We take a restrictive view of the power of eminent domain because it is in derogation of the right to acquire, possess, and defend property. *Karesh,* 271 S.C. at 342, 247 S.E.2d at 344; *see generally* 2A Julius L. Sackman & Patrick J. Rohan, *Nichols' The Law of Eminent Domain* §§ 7.02–7.07 (rev. 3d ed. 1990) (discussing broad and narrow views of public use). It is well-settled that the power of eminent domain cannot be used to accomplish a project simply because it will benefit the public. As we have previously emphasized:

> The public use implies possession, occupation, and enjoyment of the land by the public at large or by public agencies; and the due protection of the rights of private property will preclude the government from seizing it in the hands of the owner, and turning it over to another on vague grounds of public benefit to spring from a more profitable use to which the latter will devote it.

*Edens,* 228 S.C. at 573, 91 S.E.2d at 283. The involuntary taking of an individual's property by the government is not justified unless the property is taken for public use—a fixed, definite, and enforceable right of use, independent of the will of a private lessor of the condemned property. *Karesh,* 271 S.C. at 344, 247 S.E.2d at 345.

---

4. *E.g., Charleston County Aviation Auth. v. Wasson,* 277 S.C. 480, 289 S.E.2d 416 (1982); *State v. City of Columbia,* 115 S.C. 108, 104 S.E. 337 (1920) (whether property is exempt from ad valorem tax because it is used for public purpose).

5. *E.g., WDW Props. v. City of Sumter,* 342 S.C. 6, 535 S.E.2d 631 (2000); *Nichols v. South Carolina Research Auth.,* 290 S.C. 415, 351 S.E.2d 155 (1986) (whether public revenue is expended for public purpose).

County's proposed marine terminal does not meet our restrictive definition of public use. The private lessor, SAIT, will finance, design, develop, manage, and operate the marine terminal. The terminal itself will be a gated facility with no general right of public access; access is limited to those doing business with SAIT. SAIT will have agreements with various steamship lines and will charge them per container fees for unloading, storing, and delivering. The marine terminal is considered a "public" terminal simply because it will serve different steamship lines as opposed to a single line or cargo interest.

We hold the trial court erred in finding the property will be taken for public use and conclude the condemnation is therefore unlawful. In so holding, we emphasize it is the lease arrangement in the context of a condemnation that defeats its validity. We express no opinion regarding County's ability to accomplish the project in a different manner.[6] In light of our disposition, we decline to address GDOT's remaining issues.

**REVERSED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

6. Under S.C.Code Ann. § 4–9–25 (Supp.2002), all counties are permitted to exercise those powers "respecting any subject as appears to them necessary and proper for the ... general welfare" and these powers must be liberally construed. *See Hospitality Ass'n of South Carolina, Inc. v. County of Charleston,* 320 S.C. 219, 464 S.E.2d 113 (1995).