NASHVILLE HOUSING AUTHORITY *v.* CITY OF NASHVILLE *et al.*

(*Nashville,* December Term, 1950.)

Opinion filed March 9, 1951.

E. C. YOKLEY and CLAUDE CALLICOTT, City Attorneys, both of Nashville, for City of Nashville.

C. VERNON HINES, of Nashville, for Robert A. McKinstry, Intervening Petitioner.

ROBERT L. ALEXANDER, of Nashville, for complainant.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Under the Declaratory Judgment Statute, Williams' Code, Section 8835 et seq., the Nashville Housing Authority filed its bill against the City of Nashville and the Attorney General, to test the validity and constitutionality of Chapter 114 of the Public Acts of Tennessee for the year 1945. In the bill, the Authority asserted that it was incorporated and organized under Chapter 20 of the Public Acts, the First Extra Session of 1935, as amended; that in cooperation with the City of Nashville and the United States Government, it proposed to undertake and carry out a slum-clearance project known as "The Capitol Hill Redevelopment Project," in accord with the provisions and purpose of Chapter 114 of the Public Acts of 1945; that the properties behind the Capitol, to be taken and used for said Capitol Hill Re-

development Project, were "blighted areas" and "slums" within the definition of the Act of 1945; and by exhibits to the bill, copies of the contracts by the authority with the City of Nashville and the U. S. Government for cooperation and appropriations necessary for the Capitol Hill Redevelopment Project, were made a part of the bill.

For brevity, we will refer in this opinion to Chapter 20, Public Acts of the Extra Session of 1935, and its subsequent amendments, as the "Housing Authorities Law," and to Chapter 114, Public Acts of 1945, as the "Slum Clearance Law."

After the filing of the bill, the Chancellor permitted one Robert A. McKinstry, a property owner whose property would be taken in the Capitol Hill Redevelopment Project, to become a party-Defendant, and file an intervening petition.

All Defendants, the City of Nashville, the Attorney General, and the Defendant McKinstry, filed a joint demurrer which presents the following propositions of law:

(1) That the grant to the Authority of the exercise of the power of eminent domain for the purposes set forth in Chapter 114, Public Acts of 1945, is in violation of Art. I, Secs. 8 and 21, of the Constitution of Tennessee, and of the 14th Amendment of the Constitution of the United States.

(2) That the sale or lease of property covered by the slum area or parts thereof, after the clearance and preparation of the site for redevelopment, being leases or sales to private corporations and private persons, contravenes Art. XI, Sec. 8, of the Constitution of Tennessee.

(3) That the agreement of July 7, 1950, between the Authority and the City of Nashville, by which the City agrees to provide money and services through the construction and financing of a boulevard and incidental work, to levy taxes, and provide parks, public buildings and other facilities, as a direct and primary benefit to the Redevelopment Project, entails an expenditure of public funds in contravention of Art. II, Sec. 29, of the Constitution of Tennessee.

(4) That the provision of Chapter 114, Public Acts of 1945, by which the Legislature undertakes to delegate to the Authority the right and power to determine the type, nature and extent of redevelopment projects, the location thereof, the issuance of bonds, the value to be placed upon the lands for redevelopment purposes, the selection of purchasers and lessees of such land, together with the terms and conditions of sales and leases, is an improper delegation of legislative authority, and in contravention of Art. II, Secs. 1 and 2, of the Constitution of Tennessee.

The Chancellor overruled all grounds of the demurrer, and when the Defendants refused to plead further, he made a declaration by which he upheld, in all particulars, the constitutionality and validity of the Act of 1945, and all incidents of the contracts for the Capitol Hill Redevelopment Project.

The case has been very ably argued and briefed by both sides, and the Tennessee Municipal League as Amicus Curiae, through the City Attorneys of Knoxville, Chattanooga and Memphis, has filed an able brief which has been of material assistance to the Court.

We observe that no question is made but that the controversy is real; that the issue presented is justiciable; and that the matters presented by the bill, make a case

proper for a declaration under the Declaratory Judgments Act.

It seems to us unnecessary for the purpose of this opinion, to encumber it with a lengthy analysis of the difference between the "Housing Authorities Law" as it was enacted by Chapter 20, Public Acts, First Extra Session of 1935, and amended by subsequent Acts of the Legislature, and the "Slum Clearance Law" as it was enacted by Chapter 114, Public Acts of 1945. The Housing Authorities Law is carried in the 1950 supplement to Williams' Annotated Code as Sections 3647.1-3647.29y, and the Slum Clearance Law is embodied in Sections 3647.52-3647.63.

The Housing Authorities Law had for its purpose, the creation of an administrative authority by which slums and blighted areas might be cleared for greater public health and safety, and housing constructed on those cleared areas to be rented to families of low income. The emphasis of these Acts was on the destruction of old dwellings and the construction of new and more safe and sanitary dwellings for families of small income.

The Slum Clearance Law differs not at all in principle from the Housing Authorities Law, and is merely an extension of that legislation for the purpose as stated in the Act, of clearing "slums" and "blighted areas" in cities, and destroying not only old and dilapidated dwellings, but also old and dilapidated industrial and commercial buildings for the purpose of redevelopment under plan by the Authorities, not only for dwellings, but also for business, industrial and other uses. Such being our conclusion from an analysis of the various Acts making up the Housing Authorities Law, we find in reality, no serious constitutional objection that is

made against the Act of 1945, that was not made against the Housing Authorities Law and rejected by the opinion delivered by the late Chief Justice GREEN in *Knoxville Housing Authority* v. *City of Knoxville,* 174 Tenn. 76, 123 S. W. (2d) 1085.

Applying that and some other decisions of this Court, we will consider briefly the four points of Constitutional Law raised by the joint demurrer to the bill, and stated above.

The first two points:—

(1) That the grant of the power of eminent domain to the Housing Authority under the Act of 1945, was improper as violating Sections 8 and 21 of Art. I of the Constitution, and the XIV Amendment to the United States Constitution;

(2) That the Act of 1945 violates Art. XI, Sec. 8, of the Constitution of Tennessee, by conferring special benefit on particular individuals; are so inter-related that they must be considered together.

To remove health, crime and fire hazards by slum clearance, is clearly a proper and reasonable exercise of the police power. This removal is effected by slum clearance simpliciter and the fact that under the subsequent rehabilitation or restoration, the cleared area under a project planned and supervised by the Housing Authority passes into private hands to private property is an incident which does not change the nature of the slum clearance as being a public improvement in the public interest.

The line of demarcation between the power of eminent domain and the police power, is by no means clear nor easy to draw. *Theilan* v. *Porter,* 82 Tenn. 622. Where the City of Memphis forced a railway to eliminate a grade crossing in the public safety, it was held that

this was an exercise of the power of eminent domain, since by the police power the sovereign takes property and destroys it, while by eminent domain, private property is taken by public agency for later application to a different use. *Illinois Cent. Railroad Co.* v. *Moriarty,* 135 Tenn. 446, 459, 186 S. W. 1053. Compare 18 Am. Jur., Eminent Domain, Sec. 11; 29 C. J. S., Eminent Domain, Sections 6-16. In the present case, since slum clearance is a public purpose, *Knoxville Housing Authority* v. *City of Knoxville,* 174 Tenn. 76, 83, 123 S. W. (2d) 1085, and the individual citizen is to be paid reasonable compensation for the property taken, we find no constitutional objection to the exercise by the sovereign of the police power and the power of eminent domain in combination.

The same attack under Sections 8 and 21 of Art. I was made on the Housing Acts of 1935, as amended, in *Knoxville Housing Authority* v. *City of Knoxville,* 174 Tenn. at pages 82, 83 and 84, 123 S. W. (2d) at pages 1087, 1088, where, in sustaining the grant of the right of eminent domain, GREEN, C. J., said:

"It is very earnestly insisted on behalf of a property owner whose holdings are included in the area to be taken over by this Housing Authority that so much of the statutes before us as undertake to confer upon the Authority the power of eminent domain is invalid, in violation of Section 8 of Article 1 of the Constitution of Tennessee and the Fourteenth Amendment to the Constitution of the United States, . . . for the reason that the purpose for which the property is to be taken is not a public purpose and the use to which the property is to be put is not a public use. This is a familiar objection to legislation of this character. As heretofore stated, taking advantage of the Federal Housing Act, legislation has been enacted in many States authorizing

the creation of local Housing Authorities similar to complainant herein. The power of eminent domain has quite generally been conferred upon such organizations and uniformly sustained.

"The courts reason that the primary object of all government is to foster the health, morals and safety of the people. That slum districts with their filthy, congested, weather-exposed living quarters are breeding places of disease, immorality and crime. The character of the houses in such districts make of them a fire hazard. The existence of such districts depresses the taxable value of neighboring property and deprives the State of revenue. The State is also put to great expense in combating disease, crime and conflagration originating in such localities. . . .

"*Without dissent, therefore, the courts have reached the conclusion that slum clearance was a public purpose* and that Housing Authorities serve a public use. Upholding statutes similar to the Acts before us granting the power of eminent domain to organizations like complainant herein, we refer to *New York City Housing Authority* v. *Muller,* 270 N. Y. 333, 1 N. E. (2d) 153, 105 A. L. R. 905; *Dornan* v. *Philadelphia Housing Authority et al.,* 331 Pa. 209, 200 A. 834; *Wells* v. *Housing Authority,* 213 N. C. 744, 197 S. E. 693; *Spahn* v. *Stewart,* 268 Ky. 97, 103 S. W. (2d) 651. We have been supplied with opinions, not published at the time this case was submitted, of the Supreme Court of Florida in *Marvin* v. *Housing Authority* [133 Fla. 590], 183 So. 145 (July 27, 1938); of the Supreme Court of Louisiana in *State ex rel. Porterie* v. *Housing Authority,* 190 La. 710, 182 So. 725 (June 27, 1938); and of the Supreme Court of South Carolina in *McNulty* v. *Owens, Mayor et al.,* 188

S. C. 377, 199 S. E. 425 (October 13, 1938),—all to the same effect.'' (Italics ours.)

Under the Housing Authorities Law, after clearance and construction of low priced housing, the facilities are rented to individual families of small income. Under the Slum Clearance Act of 1945, before us here, after demolition and clearance, the Housing Authority is given discretion either to construct and lease or sell, or to sell or lease for reconstruction under supervision and on conditions imposed by the Authority, Code Sec. 3647.53. So far as these powers involve ''Special benefit'' and the application of Section 8, Art. XI, of the Constitution, there is no difference between (a) leasing to families of low income under the Housing Authorities Law, and (b) leasing or selling to private individuals under a Redevelopment Plan under the Act of 1945. Slum clearance and the reclamation of blighted areas is a public benefit to all the citizens, *Knoxville Housing Authority* v. *City of Knoxville,* supra, and the fact that a few only enjoy the benefits of the redevelopment, does not change the public character of the improvement.

''An enterprise does not lose the character of a public use because of the fact that its service may be limited by circumstances to a comparatively small part of the public.'' *Tennessee, Coal, Iron & Railroad Co.* v. *Paint Rock Flume & Transportation Co.,* 128 Tenn. 277, 285, 160 S. W. 522, 524; *Webb* v. *Knox County Transmission Co.,* 143 Tenn. 423, 434, 225 S. W. 1046.

On account of Federal grants in aid, a number of States have extended their original housing acts by passing Acts to eliminate blighted areas and clear slums, as in our Act of 1945. The Courts of Last Resort of all the States where the question has been presented, have upheld the extension of the powers and purposes of the Hous-

ing Authorities. Pennsylvania furnishes an example which is almost identical with our own legislative history on this subject.

After the decision of *Dornan* v. *Philadelphia Housing Authority et al.*, 331 Pa. 209, 200 A. 834 (cited and approved in *Knoxville Housing Authority* v. *City of Knoxville*, 174 Tenn. at page 83, 123 S. W. (2d) 1085), the Legislature of Pennsylvania passed an Act which is almost identical in purpose and effect with our Act of 1945. The Pennsylvania Act was "The Urban Redevelopment Law." 35 P. S. Section 1701 et seq. The same questions were raised as to the validity of that Act as have been raised with regard to our Act of 1945, and in the case of *Belovsky* v. *Redevelopment Authority of the City of Philadelphia et al.*, 357 Pa. 329, 54 A. (2d) 277, at page 281, 172 A. L. R. 953, in upholding the validity of the Act, the Pennsylvania Court said:

"*Dornan* v. *Philadelphia Housing Authority*, 331 Pa. 209, 200 A. 834, may be regarded as the prototype of the present case since all the arguments now presented on this subject were there fully considered. The Urban Redevelopment Law closely parallels the provisions of the 'Housing Authorities Law' of May 28, 1937, P. L. 955, 35 P. S. Section 1541 et seq., with which the Dornan case was concerned. The fundamental purpose of both these acts was the same, namely, the clearance of slum areas, although the Housing Authorities Law aimed more particularly at the elimination of undesirable dwelling houses whereas the Urban Redevelopment Law is not so restricted. But the Housing Authorities Law had an important additional objective in that, as ancillary to the slum clearances, there were to be provided 'decent, safe, and sanitary urban or rural dwellings, apartments or other living accommodations for persons of low in-

come'; these were to be constructed and acquired by the Housing Authorities and leased out by them to the class of tenants for whose use such accommodations were designed. In the case of the Urban Redevelopment Law the operation of clearing and rehabilitating the 'slums,' now called 'blighted areas', is not to be followed by a continuing ownership of properties by the Redevelopment Authorities for any such further and ulterior social-welfare purpose as that of providing low rental homes for persons in moderate circumstances. In this additional feature of the Housing Authorities Law there was implicit the modern recognition of an enlarged social function of government which called for an advance over previous legal conceptions of what constitutes a public use justifying the exercise of the power of eminent domain, but this court sustained the constitutionality of that act, and the courts of numerous other States have, without exception, upheld similar legislation. In the case of the Urban Redevelopment Law, therefore, the justification of the grant of the power of eminent domain is even clearer than in the case of the Housing Authorities Law, there being in the present act only the one major purpose of the elimination and rehabilitation of the blighted sections of our municipalities, and that purpose certainly falls within any conception of 'public use' for nothing can be more beneficial to the community as a whole than the clearance and reconstruction of those substandard areas which are characterized by the evils described in the Urban Redevelopment Law.''

In accord with this decision are a number of other relevant opinions from other jurisdictions. *Cremer et al.* v. *Peoria Housing Authority et al.*, 399 Ill. 579, 78 N. E. (2d) 276; *People ex rel. Touhy* v. *City of Chicago et al.* 399 Ill. 551, 78 N. E. (2d) 285; *Poole* v. *City of Kankakee,*

406 Ill. 521, 94 N. E. (2d) 416; Opinion to the Governor, R. I., 69 A. (2d) 531; Opinion of the Justices, 254 Ala. 343, 48 So. (2d) 757. After the report of the decision in *New York Housing Authority* v. *Muller,* 270 N. Y. 333, 1 N. E. (2d) 153, 105 A. L. R. 905, there is a pertinent annotation in 105 A. L. R., commencing at page 911.

Since we find that the public purpose defined in the Act of 1945, which justified the grant and exercise of the sovereign right of eminent domain was "slum clearance" by the acquisition of "blighted areas", defined in Code Section 3647.53, and since we further find that the disposition of the property after its acquisition and slum clearance, is incidental to that primary public purpose, we hold that the Act is not objectionable under Sections 8 and 21 of Art. I, nor Section 8 of Art. XI, of the Constitution of Tennessee, nor under the XIV Amendment of the Constitution of the United States.

 The third point raised by the demurrer and argued principally by the City of Nashville on the appeal, that the Act of 1945 is objectionable as violating Section 29 of Art. II of the Constitution, is really decided by our holding that slum clearance and the elimination of blighted areas is a public purpose, and a public improvement, which is not affected by the subsequent incidental passing of the cleared area into private hands. However, if additional authority is needed for our holding that the Act of 1945 is not objectionable under Section 29 of Art. II, of the Constitution, it is to be found in our cases of *Imboden* v. *City of Bristol,* 132 Tenn. 562, 179 S. W. 147; *Bedford County Hospital* v. *Browning,* 189 Tenn. 227, 225 S. W. (2d) 41.

 Finally, we consider the fourth point raised by the demurrer and argued on the appeal, that the grant and delegation of power to the Authority under Chapter

114, Public Acts of 1945, is an improper delegation of legislative power and violates Art. II, Sections 1 and 2, of the Constitution of Tennessee. The grant and delegation of power to the Authority under the Act of 1945 differs neither in principle nor degree from the powers delegated to the Authority under the Housing Authorities Law. In *Knoxville Housing Authority* v. *City of Knoxville,* supra, it was specifically held that such delegation of power was not improper:

"In the same connection it is said that this statute violates Sections 1 and 2 of Article 2 of the Constitution in that it delegates to the council of the city the power to declare when a Housing Authority shall be created by finding whether unsanitary dwelling accommodations exist in a particular area, etc., without prescribing any definite standards to guide the city council in making such finding.

"We think there is no merit in the two objections to the Acts just stated. The discretion committed to the Housing Authority in the one instance and to the city council in the other is no broader than the discretion committed to other fact-finding bodies in laws previously sustained by this court. Instances are a delegation of the power to such a body to select textbooks for the schools of the State, *Leeper* v. *State,* 103 Tenn. 500, 53 S. W. 962, 48 L. R. A. 167; a delegation of the power to such body to make exemptions or exceptions from the zoning ordinance of a city, *Spencer-Sturla Co.* v. *City of Memphis,* 155 Tenn. 70, 290 S. W. 608; delegation of the power to such a body to locate cemeteries, *Mensi* v. Walker, 160 Tenn. 468, 26 S. W. (2d) 132. Illustrations like this might be multiplied." *Knoxville Housing Authority* v. *City of Knoxville,* 174 Tenn. 76, 81, 123 S. W. (2d) 1085, 1087.

From the foregoing, we conclude that slum clearance and the redevelopment of blighted areas as it is authorized by Chapter 114, Public Acts of 1945, constitutes a proper constitutional public purpose, and that such holding is really supported by former decisions of this Court, as well as by decisions of the Courts of Last Resort in many other jurisdictions.

All assignments of error are overruled, and the decree of the Chancellor is in all respects affirmed. In view of the fact that a public question was presented, the Housing Authority and the City will divide the costs.

All concur.