## KNOXVILLE'S COMMUNITY DEVELOPMENT CORPORATION, Petitioner-Appellee,

### v.

## Arthur L. WRIGHT, executor, Estate of William C. Dunn, and Arthur L. Wright and wife, Margaret S. Wright, individually, Defendants-Appellants.

Court of Appeals of Tennessee, Eastern Section.

April 11, 1980.

Certiorari Denied by Supreme Court June 23, 1980.

Richard Stair, Sr., and Erma G. Green-wood, Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, for defendants-appellants.

Deke W. Brackett and Pattie Jane Lay Fisher, Poore, Cox, Baker, Ray & Byrne, Kenneth W. Holbert, Knoxville, for petitioner-appellee.

## OPINION

SANDERS, Judge.

In this condemnation case the Defendants have appealed from a judgment of the circuit court holding the Petitioner had a right to condemn Defendants' property.

The Petitioner-Appellee, Knoxville's Community Development Corporation, is a public body corporate and politic organized under the Tennessee Authorities Law as set forth in T.C.A. § 13–20–101 *et seq.*, as amended, for the purposes of blighted area clearance and redevelopment and operates under Chapter 114 of the Public Acts of 1945 and as provided in T.C.A. § 13–20–201, *et seq.* Under the statutes a housing authority such as Petitioner has a right to acquire, through condemnation or otherwise, property that has been legislatively declared by the city to be a blighted area for the purpose of clearance and redevelopment.

In July, 1977, the City Council for the City of Knoxville approved an urban renewal plan known as Center City Redevelopment Project No. 4 (Lower Second Creek) and authorized the Petitioner to implement this plan. The plan encompasses some 67 acres which the city council and the Petitioner determined to be a blighted area. Generally, it is bounded on the north by Jackson Avenue and Western Avenue, on

the south by Neland Drive, on the west by Fort Sanders neighborhood and the University of Tennessee and on the east by Henley Street. The redevelopment plan for the area includes upgrading and relocating streets and alleys, improving utilities, elimination of inadequate lot sizes and rezoning to intensify growth and development, preservation and restoration of the area's historical and architecturally important structures, removing the blighted influence in the area, intensifying commercial development in the Henley Street corridor and the location of permanent structures in the area which would be used for the Knoxville International Energy Exposition in 1982 and then used for business and commercial purposes thereafter. Included in the plan is the widening of Henley Street which will require an additional 40 feet of right-of-way on the westerly side.

Defendants-Appellants, Arthur L. Wright, Executor of the Estate of William C. Dunn, and Arthur L. Wright and wife, Margaret S. Wright, individually, own two lots located within the project. The lots face 50 feet on the westerly side of Henley Street and have a depth of 228 feet. A building is located on one of the lots. It fronts on Henley Street and has a depth of approximately 80 feet.

In August, 1979, the Petitioner filed suit in the Circuit Court of Knox County seeking to condemn the Defendants' property. The Defendants filed an answer in which they challenged the right of the Petitioner to condemn their property. As pertinent to this appeal, the Defendants contended in their answer the Petitioner had agreed to lease their property to Knoxville International Energy Exposition, a private corporation, and at the conclusion of the Energy Exposition to sell it to private developers for commercial use, and this is not a legitimate public use within the meaning of the statutory authority relied upon by the Petitioner.

The case was heard by the circuit judge on the single issue of the right of the Petitioner to take the property. The judge held the Petitioner had the right to take the property and the Defendants were granted an interlocutory appeal on that issue.

The material factual issues are not in dispute. They show that in September, 1979, about six weeks after suit was filed but about six months before the case was tried, a Mr. Alex Harkness, the principal for Harkness Corporation, submitted to the Petitioner, the City of Knoxville and Knoxville International Energy Exposition a plan for developing approximately 10 acres of the 67 acres within the project. The proposed plan was designed to be in keeping with the original over-all redevelopment plan of the area. It encompassed an area in the northeasterly corner of the project bounded generally by Western Avenue on the north, Clinch Avenue on the south and Henley Street on the east. About six acres of the land in the area belonged to L & N Railroad and the remaining four acres covered property which Petitioner owned or would be required to acquire from others, including the property of the Defendants. The plan called for the acquisition and renovation of the railroad station on the L & N property and the erection of an additional building or buildings on the portion of the remaining property. The plan called for the leasing of the buildings and property to Knoxville International Energy Exposition until the latter part of 1982, after which the property would be used for commercial use including office space.

The Harkness plan was approved by the Petitioner, the City of Knoxville and the Knoxville International Energy Exposition on or about September 24, 1979. The record reflects that on the same date the Petitioner agreed to sell Harkness the four acres of land needed for the project in addition to the L & N property. This included the Defendants' property which is the subject of this litigation. There is no contract of sale for the property between the Petitioner and Harkness in the record but in our determination of the case we shall treat the understanding between the parties as an enforceable contract.

As pertinent here, the Appellants have presented the following issues for consideration on this appeal:

ISSUE ONE—"Is Knoxville's Community Development Corporation's determination to take Defendant-Appellants' property and sell it to Harkness Corporation based on its resolution approving the Harkness Development Plan for the four (4) acres (for erection of an office building and commercial complex, including a motel on Defendant-Appellants' property, to be owned and built by the private commercial development company), but in the absence of a Legislative Act by the Knoxville City Council adopting said plan, an act beyond KCDC's delegated powers?

"Is such determination an abuse of its discretion?"

ISSUE TWO—"Is the KCDC condemnation suit, where KCDC acquires Defendant-Appellants' property pursuant to an agreement to sell it to Harkness for its commercial development, a condemnation for a public use or a private use? Is this proposed taking prohibited by Article 1, Sec. 21 of the Constitution of the State of Tennessee, and the 14th Amendment of the Constitution of the United States?"

█ In discussing the first issue in their brief, the Defendants say, ". . . Defendant-Appellants insist that KCDC filed its petition without legislative authority from the Knoxville City Council and exceeded its delegated authority. . . ."

This issue was not raised in the trial court and is raised for the first time on this appeal. We do not think it is controlling. However, since the case was not tried on this theory, nor was the issue raised below, it cannot now be raised for the first time in this court. *Murphy v. Reynolds,* 31 Tenn. App. 94, 212 S.W.2d 686; *McDaniel v. Owens,* 39 Tenn.App. 73, 281 S.W.2d 259; *Thomas v. Noe,* 42 Tenn.App. 234, 301 S.W.2d 391.

In discussing the second issue in their brief, the Defendants insist the taking of their property is primarily for private use and is therefore prohibited by Article I, Section 21 of the Constitution of the State of Tennessee and the 14th Amendment of the Constitution of the United States.

T.C.A. § 13–20–202, which is here involved, provides in part:

"POWERS OF HOUSING AUTHORITY AS TO BLIGHTED AREAS.—Any housing authority now or hereafter established under and pursuant to the provisions of the Housing Authorities Law, compiled in this chapter, (including any municipal housing authority whether created under and pursuant to the provisions of such law or of any special statute) may carry out any undertaking hereinafter called a redevelopment project and to that end may:

(1) Acquire blighted areas;

(2) Acquire other real property for the purpose of removing, preventing, or reducing blight, blighting factors, or the causes of blight;

(3) Acquire real property where the condition of the title, the diverse ownership of the real property to be assembled, the street or lot layouts, or other conditions, prevent a proper development of the property and where the acquisition of the area by the authority is necessary to carry out a redevelopment plan;

(4) Clear any areas acquired and install, construct, or reconstruct streets, utilities, and site improvements essential to the preparation of sites for uses in accordance with the redevelopment plan;

(5) Sell or lease land so acquired for uses in accordance with the redevelopment plan; . . . ."

T.C.A. § 13–20–204 provides:

"DISPOSAL AND USE OF LAND CONSISTENT WITH REDEVELOPMENT PLAN.—*The authority may make land in a redevelopment project available for use by private enterprise or public agencies in accordance with the redevelopment plan.* Such land may be made available at its use value, which represents the value (whether expressed in terms of rental or capital price) at which the authority determines such land should be made available in order that it may be developed or redeveloped for the purposes specified in such plan." (Emphasis ours.)

The Supreme Court had occasion to pass upon the constitutionality of these statutes in the case of *Nashville Housing Authority v. City of Nashville*, 192 Tenn. 103, 237 S.W.2d 946. In addressing the provisions of the statute which allow the authority to acquire the property and resell it to private individuals, the court said:

"So far as these powers involve 'Special benefit' and the application of section 8, Art. XI, of the Constitution, there is no difference between (a) leasing to families of low income under the Housing Authorities Law, and (b) leasing or selling to private individuals under a Redevelopment Plan under the Act of 1945. Slum clearance and the reclamation of blighted areas is a public benefit to all the citizens, Knoxville Housing Authority v. City of Knoxville, supra, and the fact that a few only enjoy the benefits of the redevelopment, does not change the public character of the improvement."

In addressing the holding in the *Nashville Housing Authority* case, *supra*, the Defendants argue, in their brief, as follows: "Appellants recognize the validity of condemnation proceedings by housing authorities which after declaring certain property a blighted area acquire property for public use, and subsequently sell a portion thereof to private owners or developers. As stated in the case of *Nashville Housing Authority v. City of Nashville* (1951) [192 Tenn. 103], 237 S.W.2d 946, 951, the taking, or the constitutionality of the taking is not violated 'by the subsequent incidental passing of the cleared area into private hands.' Here, we do not have a situation where the mere fact that the property was taken to restore a blighted area validates it as a public use; on the contrary, we have a situation where the taking was for the very purpose of acquiring the property for use by the private developer to carry out his commercial development."

■ We cannot agree with the insistence of the Defendants that the property is being acquired for use by the private developer to carry out his commercial development. The statement of the Defendants

infers a sinister, conniving, scheme on the part of the Petitioner to take their property to their detriment and the enrichment of Harkness. The proposal of Harkness to purchase the property from the Petitioner states: "The tract or tracts will be purchased upon KCDC's acquisition, clearing and preparation for redevelopment in accordance with the urban renewal plan." T.C.A. § 13–20–204 provides the authority may make land in the development area available for use by private enterprise in accordance with the redevelopment plan. Also, the city ordinance adopted by the City of Knoxville authorizing the implementation of the plan provides the Petitioner shall select developers to carry the redevelopment plan into effect.

We agree with the insistence of the Defendants that our courts will not sanction the condemnation of property by a governmental agency for private use. However, it was contemplated from the inception of the Center City Redevelopment Project No. 4 that the property within the project, or at least a portion of it, would be resold to private concerns for redevelopment. We have been cited to no authority, nor have we found any, which would prohibit the condemnation of property in a blighted area that is to be later conveyed to a developer who has previously submitted an acceptable plan for the redevelopment of the property.

Can it be said that all of the property in the 67-acre project must have been acquired by the Petitioner before a plan could be approved for the redevelopment of any part of it? Or should the Petitioner and the city have withheld consideration of the redevelopment plan submitted by Harkness until after Petitioner had acquired title to all the property needed by him through condemnation or purchase? We think the questions answer themselves.

■ There is no insistence by the Defendants that their property does not lie in a blighted area. They concede the right of housing authorities to condemn property in blighted areas and subsequently sell it to private owners. However, they argue that before the Petitioner could sell the land

here in question it was necessary for the sale to first be approved by the city council. In support of their argument they rely upon the following provision of the city ordinance: "A. KCDC shall not dispose of the Property or any portion thereof for private redevelopment for less than the appraised fair market value of the property of the date of sale or any portion without prior approval of the City Council or until the entire $11,660,000.00 Note with interest thereon has been paid."

We do not think this is controlling on the issues of the case before us for two reasons. First, we construe this provision of the ordinance to require prior approval by the city council only if the property is being sold for less than the appraised fair market value. There is no showing this is being done. Second, even if the contract of sale of the property to Harkness is not in compliance with the ordinance this would have no bearing on the question of the right of the Petitioner to take the Defendants' property by condemnation.

The issues are resolved in favor of the Appellee. The judgment of the trial court is affirmed and the case is remanded for fixing the value of the property taken. The cost of this appeal is taxed to the Appellants.

PARROTT, P. J. (E.S.), and FRANKS, J., concur.