# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

==============
## NO. 03-00-00164-CR
==============


**John Slaughter, Appellant**

**v.**

**The State of Texas, Appellee**


=====================================================================
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 0983649, HONORABLE JON N. WISSER, JUDGE PRESIDING
=====================================================================


Appellant John Slaughter appeals from his jury-trial conviction for aggravated sexual assault. Tex. Penal Code Ann. § 22.021 (West Supp. 2001). The trial court assessed appellant's punishment at imprisonment for life. Appellant asserts that the evidence is insufficient to support his conviction, and that the trial court erred in admitting unlawfully obtained evidence and in refusing to grant a mistrial. We affirm the judgment.

The physically impaired victim was sexually assaulted in her dark bedroom. Because of the darkness and her farsightedness, the victim was unable to positively identify appellant as the man who committed the crime. She testified, however, that she believed the man who attacked her was African-American based on his voice, the texture of his pubic hair, and a view of his forearm. Appellant is African-American. No fingerprints were found to identify the

victim's assailant. There was some difference in the size of appellant's foot and a footprint found on the victim's bedroom floor. DNA evidence is the principal evidence identifying appellant as the man who committed the assault.

In his first and fourth points of error, appellant insists that the evidence is insufficient to support his conviction and that the trial court erred in denying his motion for a directed verdict. In reviewing the legal sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Patrick v. State*, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); *Geesa v. State*, 820 S.W.2d 154, 167 (Tex. Crim. App. 1991); *Roberson v. State*, 16 S.W.3d 156, 164 (Tex. App.–Austin 2000, pet. ref'd); *King v. State*, 17 S.W.3d 7, 13 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).

Appellant first contends that because the State failed to prove a deadly weapon was used the evidence is insufficient to support his conviction for aggravated sexual assault and that the trial court erred in failing to grant his motion for an instructed verdict. It was alleged that appellant used "a deadly weapon, to-wit: a knife, which in the manner of its use and intended use was capable of causing death or serious bodily injury." Anything that in the manner of its use or intended use is capable of causing death or serious bodily injury is a deadly weapon. Tex. Penal Code Ann. § 1.07(a)(17)(B) (West 1994); *Bailey v. State*, No. 1179-87, slip op. at 3 (Tex. Crim. App. Feb. 14, 2001); *see McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). The victim testified that she felt the edge of a metal object against the front of her throat and the back

2

of her neck. Although she did not see the object, she testified the object was straight edged, sharp, and about six or seven inches in length. Based on the victim's description of the object held against her throat and the back of her neck, police officers James Dixon and Marcelino Gonzales testified the object was capable of causing death or serious bodily injury. In a similar case, the evidence was held sufficient to prove an object was a deadly weapon; although the victim did not see the weapon, she testified that it felt like a knife or an ice pick, and officers testified that the weapon the victim described was capable of causing death or serious bodily injury. *Regan v. State*, 7 S.W.3d 813, 819-20 (Tex. App.–Houston [14th Dist.] 1999, pet. ref'd). The evidence in the instant case is sufficient to sustain the jury's implicit finding that a deadly weapon was used to commit the sexual assault.

Next, appellant complains that the evidence is insufficient because there was "a break in the chain of custody of . . . the rape kit." Appellant argues that "the chain of custody gets confusing" after the rape kit was "checked out" by Officer Gonzales. Gonzales delivered the kit to the crime laboratory on October 28, 1997. Dr. Kathleen Corrado testified that on November 14, 1997, she took the kit from the evidence vault in the crime laboratory to work on the case. The kit admitted in evidence as State's Exhibit 17 was identified by Dr. Corrado. There is no evidence that the rape kit's contents were tampered with or commingled with other evidence and appellant makes no such claim. "Without evidence of tampering, most questions concerning care and custody of a substance go to the weight attached, not the admissibility, of the evidence." *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997); *accord Medellin v. State*, 617 S.W.2d 229, 231 (Tex. Crim. App. 1981); *Porter v. State*, 969 S.W.2d 60, 67 (Tex. App.–Austin

3

1998, pet. ref'd). "If the State proves the beginning and the end of the chain of custody, any gaps in between usually go to the weight and not the admissibility of the evidence." *Davis v. State*, 831 S.W.2d 426, 443 (Tex. App.–Austin 1992, pet. ref'd); *accord Penley v. State*, 2 S.W.3d 534, 537 (Tex. App.–Texarkana 1999, pet. ref'd). When the State completes the chain of custody from the initial collection of evidence to the laboratory, most questions concerning the care and custody, including gaps and minor theoretical breaches, go to the weight of the evidence, not its admissibility. *Porter*, 969 S.W.2d at 66; *see also Avila v. State*, 18 S.W.3d 736, 739 (Tex. App.–San Antonio 2000, no pet.); *Moore v. State*, 821 S.W.2d 429, 431 (Tex. App.–Waco 1991, no pet.). The rape kit and its contents were properly admitted in evidence for the jury's consideration. Any rational trier of fact could have found that the elements of the offense depending on the evidence furnished by the contents of the rape kit were established beyond a reasonable doubt. There was no gap in the chain of custody of the rape kit that rendered the evidence insufficient to support the jury's verdict.

Finally, appellant urges that the evidence is insufficient because: "There was no in-depth discussion of how the [DNA] tests work together or how the frequencies were determined for the jury to make an informed decision as to guilt or innocence." DNA evidence alone may be sufficient to identify an alleged defendant. *Roberson*, 16 S.W.3d at 164-72.

The expert witness's explanation of DNA testing and its use in identifying the appellant in this case was quite similar to that described in the *Roberson* opinion. *See id.* at 161-63. Michelle Lockhoof, a DNA analyst for the Texas Department of Public Safety Crime Laboratory, the expert witness in the *Roberson* case, was also the expert witness who testified in

this case. In this case, Dr. Corrado and Lockhoof explained DNA testing methods. The expert witnesses explained two types of tests to the jury. The polymerase chain reaction (PCR), a screening test used in quickly testing small stains, and the restriction fragment length polymorphism (RFLP), a test requiring more time and good quality DNA. Dr. Corrado testified that the probability of another person having the same DNA profile as appellant was "one in 5.5 billion . . . what I can say is that I would expect to find this profile in approximately one out of 5.5 billion people . . . given the rarity of the [appellant's] profile, I would think it's extremely unlikely that another person would have the same profile." The State is not required to call a mathematical expert to testify about the possible interpretations of statistical evidence. *Griffith v. State*, 976 S.W.2d 241, 251 (Tex. App.—Amarillo 1998, no pet.). Appellant's complaint concerning the lack of "in-depth discussion of how [DNA] tests work" is without merit. Viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. Appellant's first and fourth points of error are overruled.

In his second point of error, appellant urges that the trial court erred in admitting in evidence unlawfully seized samples of his blood, saliva, and hair. These samples were obtained with a search warrant. Appellant asserts that the search warrant affidavit fails to show probable cause for the search. Also, he asserts that the facts establishing probable cause were stale.

Whether the facts alleged in a probable cause affidavit sufficiently support a search warrant is determined by examining the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *Ramos v. State*, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996);

*Hackleman v. State*, 919 S.W.2d 440, 447 (Tex. App.–Austin 1996, pet. ref'd untimely filed). The probable cause determination is simply a practical common sense decision whether, given the circumstances described in the affidavit, there is a fair probability that the item to be searched for or seized will be found in a particular designated place. *Hackleman*, 919 S.W.2d at 447. "The allegations are sufficient if they would 'justify a conclusion that the object of the search is probably on the premises.'" *Ramos*, 934 S.W.2d at 363 (quoting *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986)). "The magistrate is permitted to draw reasonable inferences from the facts and circumstances alleged." *Id.*; *accord Gish v. State*, 606 S.W.2d 883, 886 (Tex. Crim. App. 1980). In determining whether an affidavit for a search warrant shows probable cause, a reviewing court looks to the four corners of the affidavit. *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996); *Doescher v. State*, 578 S.W.2d 385, 387 (Tex. Crim. App. 1978); *Hackleman*, 919 S.W.2d at 447; *Carroll v. State*, 911 S.W.2d 210, 216 (Tex. App.–Austin 1995, no pet.). The information alleged in a search warrant affidavit need not "match in quality or quantity the evidence necessary to obtain a conviction." *Janecka v. State*, 739 S.W.2d 813, 823 (Tex. Crim. App. 1987).

A search warrant may be issued to search for and seize property or items constituting evidence of an offense or constituting evidence tending to show that a particular person committed the offense. Tex. Code Crim. Proc. Ann. art. 18.02(10) (West Supp. 2001). Blood is an item of evidence that may be seized when authorized by a search warrant. *Gentry v. State*, 640 S.W.2d 899, 902 (Tex. Crim. App. 1982). A search warrant may not be issued pursuant to subdivision (10) of article 18.02 of the Code of Criminal Procedure unless the sworn

affidavit sets forth sufficient facts to establish probable cause.  Tex. Code Crim. Proc. Ann. art. 18.01(c) (West Supp. 2001).  The facts necessary to establish probable cause pursuant to article 18.02(10) are as follows : (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.  *Id.; see also Hinsley v. State*, 722 S.W.2d 476, 477-78 (Tex. App. Dallas 1986, no pet.)

The affidavit supporting the search warrant in this case stated:

AFFIDAVIT FOR SEARCH WARRANT

THE UNDERSIGNED AFFIANT, BEING A PEACE OFFICER UNDER THE LAWS OF TEXAS BEING DULY SWORN ON OATH MAKES THE FOLLOWING STATEMENTS AND ACCUSATIONS:

(1)  THERE IS IN TRAVIS COUNTY, TEXAS, SUSPECTED PERSON DESCRIBED AS FOLLOWS:

SLAUGHTER JOHN ANTONIO B/M 10-23-1976

(2)  SLAUGHTER JOHN, HEREINAFTER REFERRED TO AS THE SUSPECT, IS CURRENTLY IN TRAVIS COUNTY JAIL, CHARGED WITH - EVADING ARREST, SUSPICIOUS PERSON, ATTEMPTED BURG, AND REQUEST TO APPREHEND (AGG. SEXUAL ASSAULT) SUSPECT WAS ARRESTED AFTER EVADING ARREST FROM 11712 TALLOW FIELD, CITY OF AUSTIN, TRAVIS COUNTY, WHICH OCCURRED ON OR ABOUT THE 20TH DAY OF OCTOBER, 1997 A.D.

(3)  IT IS THE BELIEF OF THE AFFIANT THAT A SPECIFIC CRIMINAL OFFENSE HAS BEEN COMMITTED.  AFFIANT HAS REASON TO BELIEVE THAT THE SUSPECT IS THE PERSON TO COMMIT THE SAID OFFENSE, TO-WIT: AGG. SEXUAL ASSAULT, IN THE COUNTY

7

OF TRAVIS, CITY OF AUSTIN, TEXAS, AT 1805 MORNING QUAIL DR. ON OCT. 20TH 1997. AFFIANT BELIEVES THAT SUSPECT KNOWINGLY ENTERED THE VICTIM'S HOME THROUGH A BEDROOM WINDOW AND THREATENED VICTIM WITH A KNIFE. SUSPECT THEN ASSAULTED VICTIM BY PENETRATING HER ANUS WITH HIS PENIS.

(4) IT IS THE BELIEF OF THE AFFIANT THAT PHYSICAL EVIDENCE FOUND BY THE AUSTIN POLICE DURING THE INVESTIGATION OF THE ABOVE-DESCRIBED OFFENSE SHOULD BE COMPARE TO BODY SAMPLES COLLECTED FROM SUSPECT, TO WIT:

A. SAMPLES OF BLOOD, SALIVA, HAIR (PUBIC, BODY, HEAD)

(5) AFFIANT'S BELIEF OF THE FOREGOING PARAGRAPHS LISTED ABOVE ARE BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES HEREIN REFERRED TO AS PROBABLE CAUSE AS SHOWN BY THE FOLLOWING WHICH IS INCORPORATED IN AUSTIN POLICE INCIDENT REPORT 97-1220299 ____. AFFIANT HAS READ AND RELIES ON THE INFORMATION IN THE POLICE REPORT TO OBTAIN THE PROBABLE CAUSE BELOW.

A. THE AFFIANT IS A POLICE OFFICER ASSIGNED TO THE SEX CRIMES DETAIL OF THE AUSTIN POLICE DEPARTMENT AND IS RESPONSIBLE FOR THE INVESTIGATION OF SEXUAL ASSAULTS AND/OR EXPOSURE OFFENSES.

B. ON 05-02-1997, THE AFFIANT RECEIVED A.P.D. INCIDENT REPORT #97-1220299, INITIATED BY OFFICE J. DIXON 2562, A COMMISSIONED PEACE OFFICER. THE REPORT STATES THAT THE VICTIM, CREDIBLE ADULT FEMALE AUSTIN RESIDENT, WENT TO ST. DAVIDS HOSPITAL FOR A RAPE EXAM. EVIDENCE FROM THE RAPE EXAM WAS COLLECTED AND TAKEN TO THE DEPARTMENT OF PUBLIC SAFETY LABORATORY FOR PROCESSING.

A SWORN AFFIANT [SIC] WAS GIVEN BY THE VICTIM. THIS AFFIANT HAS READ ALL REPORTS AND STATEMENTS CONCERNING THE AGGRAVATED SEXUAL ASSAULT.

C. VICTIM REPORTED THAT ON 05-02-1997, SHE WAS AWAKENED BY AN UNKNOWN SUSPECT ON TOP OF HER WITH HIS HAND

8

OVER HER MOUTH, AND A KNIFE IN THE OTHER HAND. VICTIM SAID THAT SHE FEARED FOR HER LIFE. SUSPECT THEN FORCED HIS PENIS INTO THE VICTIMS MOUTH, MAKING HER PERFORM ORAL SEX. SUSPECT THEN TURNED THE VICTIM ON HER STOMACH AND INSERTED HIS PENIS INTO HER ANUS.

SUSPECT ENTERED THE BEDROOM WINDOW OF THE VICTIM AND ALSO EXITED THE SAME WINDOW. SUSPECT COVERED THE VICTIMS FACE WITH HIS HAND AND DISPLAYED A KNIFE.

SUSPECT WAS DESCRIBED AS A BLACK MALE IN HIS LATE 20'S EARLY 30'S LAST SEEN WEARING DARK CLOTHING AND HAVING BALD OR SHAVED HEAD. SUSPECT TALKED IN A CLEAR LOW VOICE. SUSPECT HAD MUSCULAR ARMS AND A FLOWER SENT COLOGNE. SUSPECT DESCRIBED AS MEDIUM BUILD ABOUT 6'00 FT. TALL.

D.   I RECEIVED INFORMATION ON OFFENSE REPORT #97-2930748, THAT OCCURRED ON 10-20-97, SUSPICIOUS PERSON, ATTEMPTED BURGLARY OF RESIDENT, AND REQUEST TO APPREHEND (AGG. SEXUAL ASSAULT).

THE SUSPECT IN THIS CASE IS SLAUGHTER JOHN B/M 10-23-76. SUSPECT WAS IN THE BACK YARD OF 11712 TALLOW FIELD. OFFICERS ON THE SCENE WERE AWARE OF A RECENT BURGLARY AT 11718 TALLOW FIELD. OFFICERS APPROACHED AND IDENTIFIED THEMSELVES AND THE SUSPECT JOHN SLAUGHTER RAN FROM OFFICERS. OFFICERS CHASED SUSPECT INTO THE APARTMENT AT 11701 METRIC BLVD. #711. SUSPECT DOES NOT LIVE IN THE APARTMENT NOR DOES HE GIVE AN AUSTIN ADDRESS. SUSPECT GAVE THE OFFICERS A FALSE NAME, UPON FURTHER INVESTIGATION SUSPECT WAS FOUND TO HAVE FIVE OUTSTANDING WARRANTS FROM BIG SPRINGS, TEXAS.

ONE OF THOSE WARRANTS IS NUMBER 96RS723 FOR AGGRAVATED SEXUAL ASSAULT, THE BOND IS SET AT 30,000.00.

I TALKED WITH MR. SLAUGHTER WHO STATED THAT HE HAS BEEN IN AUSTIN FOR NINE MONTHS. MR. SLAUGHTER DOES NOT HAVE A LOCAL AUSTIN ADDRESS. TWO RAPES HAVE OCCURRED IN THE GRACYWOODS SUBDIVISION WHICH IS IN THE IMMEDIATE AREA WHERE SUSPECT WAS FOUND IN THE BACK YARD. SUSPECT ALSO MATCHES THE PHYSICAL DESCRIPTION GIVEN BY THE VICTIM. SUSPECT WAS ASKED FOR CONSENT FOR HIS BLOOD AND HAIR FOR COMPARISON AND REFUSED.

This affidavit alleges in detail that the specific offense of aggravated sexual assault had been committed. It specifically describes the items to be seized as samples of blood, saliva, and hair of appellant. The affidavit also states affiant's belief that the samples of blood, saliva, and hair to be seized from appellant would be evidence tending to show that appellant was the particular person who committed the offense.

In applying the principles of *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997), regardless of whether we review the sufficiency of the warrant affidavit *de novo*; *see Wynn v. State*, 996 S.W.2d 324, 326-27 (Tex. App.–Fort Worth 1999, no pet.); *Lane v. State*, 971 S.W.2d 748, 752 (Tex. App.–Dallas 1998, pet. ref'd); *Wachter v. State*, 961 S.W.2d 598, 600 (Tex. App.–San Antonio 1997, pet. ref'd); or we apply the abuse of discretion standard of review, *see State v. Bradley*, 966 S.W.2d 871, 873-74 (Tex. App.–Austin 1998, no pet.); *Daniels v. State*, 999 S.W.2d 52, 54 (Tex. App.–Houston [14th Dist.] 1999, no pet.); *Barton v. State*, 962 S.W.2d 132, 134-38 (Tex. App.–Beaumont 1997, pet. ref'd), we conclude that the magistrate properly issued the search warrant, and that the trial court did not err in admitting in evidence the appellant's blood sample.

As the State suggests, the concept of "staleness" urged by appellant, is not applicable to an affidavit supporting a search warrant authorizing a search for and seizure of blood, saliva, and hair. The staleness rule is concerned with whether items to be searched for will probably be in a designated place at the time of the proposed search. For probable cause to arrest, it is simply necessary that there exist a probability that a crime has been committed and that the person to be arrested committed it. Probable cause to search, on the other hand, ordinarily may be said to exist only if it is established that certain identifiable objects are probably connected with certain criminal activity and are probably to be found at the present time in a certain identifiable place. Search cases then, in contrast to arrest cases, present the unique problem of whether the probable cause which once existed has grown stale.[1]

Staleness depends upon the circumstances of each case. Usually, search warrants are concerned with the location of moveable objects such as stolen property or drugs. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may be stale the next day after the room has been cleaned; the observation of the burial of a corpse in a cellar may well not be stale three decades later. *Andresen v. State*, 331 A.2d 78, 106 (Md. Ct. Spec. App. 1975), *aff'd sub nom*, *Andresen v. Maryland*, 427 U.S. 463 (1976). Blood, saliva, and hair will always be found on or in the body of a suspect. Appellant's staleness argument is without merit. Appellant's second point of error is overruled.

---

[1] For a more extensive discussion of staleness, *see* Wayne R. LaFave, *Search and Seizure* § 3.7 (3d ed. 1996).

In his third point of error, appellant complains of the trial court's alleged abuse of discretion in refusing to grant a mistrial. On direct-examination of Officer Marcelino Gonzales, the prosecutor asked him about a conversation he had with appellant before appellant was arrested:

Q. (By Prosecutor) Without going into what was said, you went and met with him, but you were unable to get a blood sample at that time?

A. Correct, at that time it was -- yeah, he didn't consent to that.

DEFENSE COUNSEL: Judge, I'm going to object to -- I'm going to object to any statements about conversations between my client and this officer.

THE COURT: We'll sustain the objection.

DEFENSE COUNSEL: I'm going to ask the jury to disregard the question and the answer.

THE COURT: Okay. The jurors will disregard the last question and answer.

DEFENSE COUNSEL: And I move for a mistrial.

THE COURT: That request is denied.

Appellant argues that a mistrial should have been granted because the response given by Officer Gonzales indicating that appellant did not consent to giving a blood sample caused harm incurable by an instruction to disregard.

Appellant's objection was not sufficiently specific and it was untimely made after the question was asked and answered. The non-specific, untimely objection failed to preserve the error claimed on appeal. *See Lagrone*, 942 S.W.2d at 618; *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995); *Russell v. State*, 904 S.W.2d 191, 196-97 (Tex. App.—Amarillo 1995, pet. ref'd); *Juhasz v. State*, 827 S.W.2d 397, 401 (Tex. App.—Corpus Christi 1992, pet.

12

ref'd). Furthermore, the trial court's prompt admonition for the jury to disregard the question and answer adequately preserved appellant's rights. Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *Hernandez v. State*, 805 S.W.2d 409, 413-14 (Tex. Crim. App. 1990); *Webster v. State*, 26 S.W.3d 717, 723 (Tex. App.—Waco 2000, no pet.). In the context of this case, the trial court's admonition for the jury to disregard the question and answer was sufficient. The trial court did not abuse its discretion in refusing to grant a mistrial. We overrule appellant's third point of error.

The judgment is affirmed.

Carl E. F. Dally, Justice

Before Justices Yeakel, Patterson and Dally[*]

Affirmed

Filed: February 28, 2001

Do Not Publish

13

\* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).