STATE *ex rel.* CAMPBELL COUNTY *v.* DELINQUENT TAXPAYERS OF 1939.

(*Knoxville,* September Term, 1945.)

Opinion filed December 1, 1945.

JAMES B. WRIGHT, of Knoxville, for L. & N. R. Co.

CLYDE W. KEY, of Knoxville, for Southern Ry. Co.

Joe M. Agee, of LaFollette, for Campbell County.

Mr. Chief Justice Green delivered the opinion of the Court.

This is a suit for the collection of delinquent taxes in Campbell County for the year 1939. There were many defendants, among whom were the Southern Railway Company and the Louisville & Nashville Railroad Company. These companies paid all of their 1939 taxes except so much thereof as was assessed as "jail tax" of 18c on $100. They contended that this jail tax was void. The chancellor overruled this contention of the railroad companies and rendered decrees against them for the amounts due on account of this jail levy with interest, penalties, etc. From this ruling of the chancellor the defendant railroad companies have appealed to this Court.

The case below was tried on a stipulation of facts. At its July, 1939, term the Quarterly County Court of Campbell County adopted a resolution whereby the county undertook to function under Chapter 300 of the Public Acts of 1937, known as the Cash Basis Act, and a committee was appointed to prepare a budget and submit it to the court later in the month.

At an adjourned session of this term of the county court the budget committee made its report. That report opened as follows:

"We, the Committee, beg to report that we met in the office of the County Tax Assessor on July 24th and 25th, 1939, and having our possession a special investigation report of Dahlberg & Company, Auditors, a Representative of whom was present. We find that for several years the expenditures for the General Fund of our

county has consistently exceeded the income therefor. For the year 1939, the expenditure of our general fund was $70,693.68 and the income therefore was $47,143.72, making a net deficit for the said year of $23,549.96. In endeavoring to prepare a budget for this particular fund, we have attempted to contact each County Official who depends upon this fund for the operation of his office, and have endeavored, without partiality, to appropriate for each individual office money sufficient in amount to operate same for the fiscal year July 1, 1939, to June 30, 1940. The expenditure of all departments from the General Fund is estimated at $52,784.00, thereby requiring the tax levy of 40c, and a Judgment Levy of 35c, making a total tax levy for the operation of the General Fund for the next Fiscal year of 75c.''

Later in the report of the budget committee the following appears:

''We recommend that the Trustee be authorized and directed to transfer income from the Judgment Tax Levy into the General Fund of the County from time to time as money accumulates in said fund, and pursuant to the transfer of such money that same be expended in the manner as other General Funds money.''

The report then recommended the authorized levy of 40c for general county purposes and a levy for judgments of 35c. Detailed estimates of the expenses of various departments of the county government were made and filed as exhibits to the report. By resolution of the quarterly court at this adjourned meeting, the report of the budget committee was adopted and a levy made in accordance with the committee's recommendations.

Evidently, shortly afterwards, the county attorney became dubious about this levy for judgments. Upon an estimated 90 per cent of tax collections the 35c judgment

levy would produce about $20,000. It seems that judgments to be paid during the year 1939 amounted to something less than $6,000. This being the situation, the county attorney communicated with the Attorney General of the State on the subject and on August 10, 1939, was advised by that office, Honorable Nat Tipton replying, that "The quarterly county court has no right to levy a tax for the purpose of paying judgments and to provide in addition thereto that any surplus shall be transferred to the general fund. Especially is this true where the levy for general county purposes has already been fixed at the maximum permitted by law."

Thereafter the budget committee seems to have made another report to the quarterly county court and that body at its October session, following a recommendation of the budget committee, amended the levy made in July. The July levy was changed in no particular except that by the October resolution 17c was levied for judgments and 18c levied for jail. There was no jail levy in July. The 17c levy for judgments seems to have been considerably more than enough to take care of that item but no question is made on that. It is the 18c levy for jail that is here attacked.

In an exhibit to the original report of the budget committee made to the adjourned term of the quarterly county court in July upkeep and maintenance of the jail was estimated under a sub-head at $200. As a matter of fact, it seems that nothing was spent on this account during that year.

As heretofore pointed out, the quarterly county court was proceeding under Chapter 300 of the Acts of 1937, the Cash Basis Statute. Under that Act an adopted budget, as this one here, is the basis of the levy. As seen, the budget estimate for jail maintenance and upkeep was

$200 and no part of that sum was spent for that purpose. It does not appear that the quarterly county court had taken any steps toward building a new jail or having any extensive alterations or repairs made to the existing structure. The jail levy of 18c corresponded with so much of the original levy as the budget committee and the court thought necessary to take off the judgments levy to make the latter levy valid. It was expected to yield about $9,000.

▇ In our opinion the circumstances detailed quite plainly show that there was no intention on the part of the quarterly county court in the levy of this 18c jail tax to apply the funds arising from such source to jail purposes. The procedure appears to have been a colorable device to evade the statutory limitation of county taxes for the general fund to 40c. Such procedure is fraudulent in law and cannot be condoned.

In *Robbins* v. *Phillips*, 175 Tenn. 568, 574, 136 S. W. (2d) 507, 509, following earlier cases there cited, we said: ''The taxpayers of every county have a right to know for what purpose they are being taxed and also to know that taxes collected from them for any special purpose are applied to such purpose. This is necessary to enable the taxpayers to challenge a levy, if it be for a purpose not authorized by law, and if the levy is authorized, to compel the application of the tax to the purpose for which it was in fact levied.''

It seems to us that the records of the quarterly county court clearly show its purpose when levied was to add the proceeds of the 18c jail tax to the general county fund and we are of opinion that defendants have the right to challenge the legality of a tax laid for a valid purpose with the manifest intent of misapplying the proceeds.

Reliance is placed on certain language of the Court in *Storie* v. *Norman*, 174 Tenn. 647, 652, 130 S. W. (2d) 101, 103. That was a suit to recover taxes paid by the plaintiff to Fentress County in which the validity of several levies was challenged. In the discussion it was said: "The ten-cent levy for jail purposes in addition to the forty-cent levy for county purposes is next challenged. It is the duty of the county court to erect a jail and keep it in repair at the expense of the county, and it may levy a special tax for that purpose. Code, secs. 752 and 755. The item is assessed as 'Jail tax.' It is shown by the stipulation that the proceeds of this levy were used to pay off warrants issued to the Sheriff of Fentress County for jail turnkeys and for boarding prisoners. The special levy of 'Jail tax' was valid. How the proceeds of the levy were disbursed is a question not affecting the validity of the levy, even though the fund may have been paid out irregularly. The fourth assignment of error must be overruled."

The observation that the disposition of the proceeds of a levy does not affect the validity of the levy is possibly correct as applied to the facts of that case. Such a conclusion, however, is not sound and is wholly inapplicable to a case in which it appears as here that the levy was made with the intention of misapplying its proceeds to a purpose not authorized. So far as the opinion in *Storie* v. *Norman* discloses, the jail tax levy was made in good faith.

Concerning the validity of a city ordinance, this Court has said that, "There was no arbitrary rule by which the reasonableness of an ordinance could be tested, but that its validity depended upon the surrounding circumstances and the purposes and operation of the ordinances under consideration." *Carroll Blake Construction*

*Co.* v. *Boyle,* 140 Tenn. 166, 180, 203 S. W. 945, 948; *Jones* v. *Nashville,* 109 Tenn. 550, 557, 72 S. W. 985. We think a like test is applicable to relative action of any subordinate governmental agency. Here the surrounding circumstances as revealed by the county court's own records show this jail tax levy was made for an illegal purpose—to impose a greater tax for the county's general fund than the law allows. A county's power to tax is delegated and strictly limited to the scope of the delegation. Chapter 3 of the Public Acts of the First Extra Session of 1931, Williams Code, sec. 1045.1, limits the county tax for general purposes to 40c on each $100.

It results that in our opinion the chancellor erred in holding these defendants liable for the jail tax here levied and his decree will be reversed in that respect and the tax bill dismissed as to them.