# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 16, 2001 Session

## POLK COUNTY, TENNESSEE v. GLENDA B. ROGERS, d/b/a OCOEE RIVER RATS

### Appeal from the Chancery Court for Polk County
#### No. 6431    Jeri S. Bryant, Chancellor

### FILED MARCH 18, 2002

### No. E2001-00004-COA-R3-CV

In this appeal from the Polk County Chancery Court the Appellant , Glenda B. Rogers, d/b/a Ocoee River Rats, contends that evidence presented at trial showed that the classification of whitewater rafting businesses and their customers under a private act applicable to the Appellee, Polk County, assessing a privilege tax on guided rafting ticket sales by such businesses in Polk County is without reasonable basis and that the Trial Court's finding to the contrary was in error. We affirm the judgment of the Trial Court and we adjudge costs of the appeal against the Appellant.

### Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. Michael Swiney, JJ., joined.

Joe Gene Bagwell, Knoxville, Tennessee, for the Appellant, Glenda B. Rogers, d/b/a Ocoee River Rats

Denny Ernest Mobbs, Cleveland, Tennessee, for the Appellee, Polk County, Tennessee

## OPINION

An opinion was previously rendered by this Court in this case on February 28, 2000, wherein we reversed the Trial Court's judgment against the Appellant, Glenda B. Rogers d/b/a Ocoee River Rats, for privilege taxes assessed by the Appellee, Polk County, for the years 1988, 1989, 1990 and 1991. These taxes were assessed pursuant to authority conferred upon Polk County by the legislature in Chapter Two, Private Acts of 1981 and subsequent amendment by Chapter 135, Private Acts of 1991. Our reversal of the Trial Court's judgment was based upon our conclusion that this Private Act was inconsistent with the general law in this state which provides that businesses like that of the Appellant shall be exempt from such taxation. We did, however, remand the case to the

Trial Court for its determination as to whether a reasonable basis exists for Polk County's assessment of a privilege tax on whitewater businesses such as that of the Appellant in suspension of the general law. On remand the Trial Court found that such reasonable basis does exist and reinstated its previous judgment against the Appellant for the delinquent taxes.

The issues presented for our review in this appeal are restated as follows:

1. Is a private act which authorizes imposition of a privilege tax upon the sale of rafting tickets by commercial whitewater rafting businesses in Polk County in violation of the Tennessee Constitution because such act is contrary to the general law in Tennessee and because there is no reasonable basis for the special classification of such transactions?

2. Was a private act which authorizes imposition of a privilege tax upon the sale of rafting tickets by commercial whitewater rafting businesses in Polk County repealed by implication by adoption of T.C.A. 67-6-330(9)?

3. Does a private act which authorizes imposition of a privilege tax upon the sale of rafting tickets by commercial whitewater rafting businesses in Polk County violate the general law of Tennessee by imposing a higher tax rate than is allowed by statute?

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below. There is no presumption of correctness with regards to a trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996). There is, however, a presumption that findings of fact by a trial court are correct and, absent evidence preponderating to the contrary, we must honor that presumption. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87 (Tenn.1993).

Polk County consists of two population areas separated by 151,000 acres of the Cherokee National Forest which comprise 54% of the total land area of the county. The Ocoee River flows east to west through the center portion of the county primarily within the boundaries of the Cherokee National Forest. Since 1980 the Ocoee has been open to recreational whitewater rafting and kayaking and, at the time of trial, 24 commercial whitewater rafting establishments were doing business in Polk County offering guided raft trips down the river. Rafting season runs for a total of 116 days each year from the last weekend of March until the first weekend in November. During the rafting season of 1999, an estimated one million people visited the Ocoee area of Polk County. A data report prepared by the Tennessee Department of Environment and Conservation and introduced as evidence in this case reveals that an estimated 301,000 people actually used the river that year. There was also testimony presented at trial that 36,000 of those 301,000 people were private paddlers while the remainder were customers of commercial rafting establishments. Further testimony at trial shows that estimated gross revenues realized by the commercial rafting industry doing business in Polk County are between seven and a half to nine million dollars per year just from sales of rafting tickets alone and not including receipts from ancillary sales of other items such as T-shirts.

On February 9, 1981, a private act was passed by the state legislature designated Chapter 2, Private Acts of 1981 and referred to herein as 'the Private Act' or 'theAct'. In its preamble the Act acknowledges that the Hiwassee and Ocoee Rivers which flow through Polk County attract an increasing number of canoeing and rafting enthusiasts, that "[t]he influx of these enthusiasts has placed an increased burden on Polk County's local inhabitants to provide law enforcement, traffic control, and first-aid and ambulance services out of proportion to the needs of the local citizenry" and that "[a]t least a portion of the expenses of this greater service burden should be borne by the tourists for whose use and protection the needed services are provided". In acknowledgment of these factors the Act authorizes Polk County to levy a privilege tax as follows:

> SECTION 2.  The legislative body of Polk County is hereby authorized to levy a privilege tax upon the privilege of a consumer paying consideration for admission for an amusement.  Such tax shall be imposed on the consideration charged by the operator at a rate equivalent to the combined rate imposed by the state and Polk County under the "Retailers' Sales Tax Act" and the "1963 Local Option Revenue Act" pursuant to Tennessee Code Annotated, Title 67, Chapter 30, as the same may be amended and adopted.  Such tax so imposed is a privilege tax upon the consumer enjoying the amusement, and is to be collected and distributed as provided in this act.

The Act defines 'amusement' as "any ride, excursion, or float trip by canoe, raft, or similar floating device on a whitewater river where a fee is charged by any person for such ride, excursion, or float trip, which charge is otherwise not included as a taxable privilege under the "Retailers' Sales Tax Act" imposed by Tennessee Code Annotated, Title 67, Chapter 30"

The Act was amended by Chapter No. 135 of the Private Acts of 1991 whereby the following language was deleted:

> Such tax shall be imposed upon the consideration charged by the operator at a rate equivalent to the combined rate imposed by the state and Polk County under the "Retailers' Sales Tax Act" and the "Local Option Revenue Act" pursuant to Tennessee Code Annotated , Title 67, Chapter 30, as the same may be amended and adopted.

Under the Act as amended this deleted language was replaced by the following:

> Such tax shall be imposed on the consideration charged by the operator at a rate of ten percent (10%).

The Appellant failed to pay taxes due under the Act for the years 1988, 1989, 1990 and 1991 and consequently, as previously stated, the Trial Court entered judgment against the Appellant for taxes assessed for those years.

The first issue we address is whether the Private Act is in violation of the Tennessee Constitution because it is contrary to the general law in this state without reasonable basis.

Article XI, Section 8 of the Tennessee Constitution provides:

> **Sec. 8. General laws only to be passed.**- The Legislature shall have no power to suspend any general law for the benefit of any particular individual, *nor to pass any law for the benefit of individuals inconsistent with the general laws of the land*; nor to pass any law granting to any individual or individuals, rights, privileges, immunities or exceptions other than such as may be extended to any member of the community, who may be able to bring himself within the provisions of such law. [Emphasis Added]

As we concluded in our prior opinion in this case, T.C.A. 67-6-330(a)(9) exempts commercial whitewater rafting on waterways such as the Ocoee from the general state law taxing amusements as codified at T.C.A. 67-6-212 and, therefore, the Private Act pursuant to which Polk County seeks to impose privilege taxes against the Appellant cannot be upheld under Article XI absent evidence showing that a "reasonable basis exists for taxing whitewater rafting activity in Polk County in contravention of the general statutory exemption against such taxation." *Polk County, Tennessee v. Glenda B. Rogers, d/b/a, Ocoee River Rats* an unreported opinion of this Court filed in Knoxville on February 28, 2000 (LEXIS 119).

The Appellant contends that the Trial Court erred in determining that there is reasonable basis for suspension of the general law in Polk County with respect to commercial whitewater rafting. We disagree with the Appellant.

In determining whether there is sufficient evidence to support the Trial Court's finding of reasonable basis for the special classification of whitewater rafting businesses in Polk County so as to make ticket sales by those businesses subject to privilege taxes under the Private Act, we are guided by the Supreme Court's recitation of principles derived from the case law of this state as set forth in *Stalcup v. City of Gatlinburg*, 577 S.W.2d 439 (Tenn. 1978) at page 442:

> It is not necessary that the reasons for the classification appear in the face of the legislation. *State ex rel. Melton v. Nolan* (1930) 161 Tenn. 293, 30 S.W.2d 601. If any possible reason can be conceived to justify the classification, it will be upheld and deemed reasonable. *Knoxtenn Theatres v. McCanless* (1941) 177 Tenn. 497, 151 S.W.2d 164. So long as the statute applies equally and consistently to all persons who are or may come into the like situation or circumstance, it is not objectionable as being based upon an unreasonable classification. *Stratton v. Morris* (1890) 89 Tenn. 497, 15 S.W. 87. There is no general rule by which to distinguish a reasonable from an unreasonable classification, the question being a practical one varying with the facts in each case. *Dilworth v. State* (1959) 204 Tenn. 522, 322 S.W.2d 219. Where the

-4-

reasonableness of the classification is fairly debateable the courts will uphold the classification. *Phillips v. State* (1957) 202 Tenn. 402, 304 S.W.2d 614.

In the *Stalcup* case the Court found that, even though a gross receipts tax upon businesses in Gatlinburg was inconsistent with the general law as set forth in the Business Tax Act, there was a reasonable basis for the special classification of Gatlinburg businesses and, therefore, the act authorizing the gross receipts tax was not in violation of Article XI, Section 8 of the Tennessee Constitution. The Court's finding of reasonableness was based on the following factors:

1. The City of Gatlinburg exhibited unique characteristics.

2. The tax in question was equally applicable to all those falling within the class.

3. There was "a direct, natural and acceptable relation between the classification made and the objective of the enactment" in that the demand for tax revenue was primarily caused by the influx of tourists into Gatlinburg and the tax imposed the burden upon those who exercised the privilege of doing business with such tourists.

The Appellant points out that Polk County does not exhibit the unique characteristics, such as an unusually large number of tourist accommodations, which make the City of Gatlinburg a proper candidate for special classification. However, as noted by the Court in *Stalcup*, the question of reasonableness of classification is "a practical one, varying with the facts in each case." Polk County's uniqueness lies in the fact that, although its resources are calculated to support a population of less than 15,000, for the relatively brief span of 116 days each year those resources must be utilized, in a cooperative effort with state and Federal services, to oversee and control an estimated one million tourists attracted to the recreational benefits of the Ocoee River.

We also find that the tax imposed under the Private Act in this case is equally applicable to all those falling within the class. The class upon which the tax is imposed consists of those commercial rafting companies and their customers who engage in the sale/purchase of rafting tickets within Polk County. The Appellant argues that the tax is not imposed equally because *all* whitewater rafting businesses conducting rafting trips in Polk County are not subject to the tax. In support of this argument the Appellant asserts that a rafting business located inside Polk County can sell tickets for rafting on the Ocoee through an office outside the county and avoid the tax. However, this assertion does not contradict the fact that the tax is applied equally to all rafting company ticket sales within the county. In further support of its argument of unequal treatment, the Appellant presents evidence that one rafting company is not required to pay the tax even though in its brochures it offers guided rafting tours on the Hiwassee River, the other river named in the Private Act. When asked why Polk County does not collect the privilege tax for rafting on the Hiwassee, county executive, Hoyt Firestone, testified that guided service is not provided on the Hiwassee as it is on the Ocoee and no fee is charged. Mr. Firestone further testified that on the Hiwassee a sales

-5-

tax is imposed on the rental of rafts without guides and that imposition of the privilege tax would constitute double taxation. It is evident from Mr. Firestone's testimony that, if Polk County inappropriately fails to impose the privilege tax on ticket sales for rafting on the Hiwassee, such failure is based upon the misperception that Hiwassee rafting companies do not charge a fee for guided rafting trips. Misapplication of the law does not make the law unconstitutional. *Fell v. Armour,* 355 F.Supp. 1319 (M.D. Tenn. 1972).

Finally, as regards factors pertaining to reasonableness, we find that the demand for tax revenue which the Private Act seeks to satisfy is primarily caused by the influx of tourists who are attracted to whitewater river recreation in Polk County and that the tax is imposed upon ticket sales by those who exercise the privilege of doing business with those tourists. There was ample testimony at trial that various services funded by county tax revenue are burdened by the influx of tourists attracted to Polk County during rafting season. For example, it was testified that Polk County contracts for waste disposal at a cost of $400,000.00 per year based on a rate of $70.00 per ton. It was further testified that such waste tonnage increases 12 to 15% during rafting season. There was additional testimony regarding the fact that Polk County pays $736,000.00 per year for ambulance service and that in 1999 there were 35 ambulance runs to transport persons injured in rafting accidents. There was also testimony from the sheriff of Polk County that during rafting season his department has at least two employees, each in a vehicle, patrolling the rafting area each day at a cost of $80.00 per day per employee plus the cost of the vehicle and gas. These attestations and others in the record constitute sufficient evidence to support a finding that increased tax revenues are necessitated by the influx of tourists attracted to the county because of its whitewater activities.

As previously stated, the Appellant asserts that the tax under the Act is imposed solely upon the sale of rafting tickets in Polk County and rafting businesses are not taxed for ticket sales for rafting in Polk County so long as those sales take place outside the county. The Appellant also notes that private kayakers are not subject to the tax. Therefore, Appellant contends, the classification under the Act is arbitrary and irrational because it is only imposed upon a portion of those who are utilizing the Ocoee River in Polk County and thereby allegedly burdening county services. We disagree with the Appellant's reasoning. Although it is true that the tax does not apply to *everyone* engaged in recreational use of the Ocoee in Polk County, it is indisputable that those who *are* taxed are also benefitting from use of the river and that those who *are* taxed represent at least a portion of the one million tourists burdening Polk County's services during rafting season each year. Accordingly, we find that the classification under the Act is neither irrational nor arbitrary and we find that there is a "direct, natural and acceptable relation" between the classification and the Private Act.

The Appellant cites the case of *State ex rel. Campbell v. Delinquent Taxpayers of 1939,* 191 S.W.2d 153 (Tenn.1945) for the proposition that a tax must be used for the purpose for which it was levied and asserts in her brief that the funds generated as a result of the privilege tax "are used for general county purposes and are not in any way expended to alleviate the alleged burden the county used to justify the enactment of the Private Act." The Appellant notes that the Act prohibits use of such funds to provide a subsidy to whitewater rafting and that this means that the funds "cannot be

used to support or assist the whitewater rafting business, which bears the burden of the privilege tax."

It is our determination that the purpose of the Private Act is to alleviate the burden placed upon county services as a consequence of whitewater rafting activity on the Ocoee and the monies collected as a result of the privilege tax are deposited in the general fund which is the source of financial support for those county services impacted by whitewater recreation. Thus, we find that the tax is used for the purpose for which it is levied. *Webster's New World Dictionary of the English Language* (1966) defines 'subsidy' as "a government grant to a private enterprise considered of benefit to the public." It would in no way serve the purpose of the Act to tax whitewater rafting businesses and then return the proceeds realized as a result of that tax to those same businesses by way of a subsidy.

The next issue presented in this case is whether the Private Act was repealed by implication by the adoption of T.C.A 67-6-330(9). We find nothing in the record which shows that this issue was raised in the original trial of this case which concluded on March 2, 1999, and it appears that this issue was not raised until the Appellant filed her declaration of issues to be raised on appeal on July 20, 1999. An issue not raised in the trial court cannot be raised for the first time on appeal. *Knoxville's Community Dev. Corp. v. Wright*, 600 S.W.2d 745 (Tenn. Ct. App. 1980). Accordingly, we decline to review this issue.

The final issue we address in this appeal is whether the Private Act violates the general law of Tennessee by imposing a higher rate of tax than is allowed by statute. The Appellant asserts that pursuant to T.C.A. 67-6-212 the tax rate on amusements in Tennessee is set at the same 6% rate set for the sale of tangible personal property under T.C.A. 67-6-202. The Appellant further cites the Local Option Revenue Act set forth at T.C.A. 67-6-702(a)(1) as it appeared in 1993 when this case was filed which states:

> (a)(1) Any county by resolution of its county legislative body or any incorporated city or town by ordinance of its governing body is authorized to levy a tax on the same privileges subject to this chapter as the same may be amended, which are exercised within such county, city or town, to be levied and collected in the same manner and on such privileges but not to exceed two and three-fourths percent (2 3/4 %)[1]; provided, that the tax levied shall apply only to the first one thousand six hundred ($1,600) on the sale or use of any single article of any single of personal property.

---

[1]The Appellant asserts that following the language "but not to exceed" the statute sets forth the words "one half (1/2)of the rates levied therein". However, section (a)(1) was amended effective April 1, 1992, to substitute "two and three-fourths percent (2 3/4% ) for "one-half (1/2) of the rates levied therein". The statute as amended was in effect in 1993 when this case was filed.

The Appellant contends that the 10% rate of tax under the Private Act as amended in 1991 is more than three times larger than permitted by the general law as set forth at T.C.A. 67-6-702 and is, therefore, in violation of Article XI, Section 8, of the Tennessee Constitution. We disagree with the Appellant's analysis of the law in this regard.

First of all, we note that the Appellant erroneously references T.C.A. 67-6-702(a)(1), not as it appeared when the delinquent taxes were assessed, but as it appeared " in 1993 when this case was filed". It is presumed that amendments to tax statutes apply prospectively unless an intention to the contrary is clearly expressed. *Northwest Airlines v. Tennessee State Bd. of Equilization*, 969 S.W.2d 911 (Tenn. 1998). Although we note this error, it has no bearing upon our determination regarding the issue before us.

T.C.A. 67-6-702(a)(1) authorizes a county to levy a tax on the same privileges subject to chapter 6 of Title 67 and the rate limitation imposed is pertinent *only* to those privileges subject to chapter 6. T.C.A. 67-6-330 states:

> (a) There is exempt from the sales tax upon admission, dues or fees imposed by § 67-6-212:
>
> ...
>
> (9) Events or activities conducted upon rivers and waterways in this state whose continued use for recreational purposes is contingent upon revenue produced pursuant to agreements entered into between the state of Tennessee and the federal government, or any agency thereof, which agreements provide for the establishment of a trust fund for such purposes;...

It is undisputed that this exemption applies to ticket sales for whitewater rafting on the Ocoee. Since such sales are not "subject to this chapter" within the contemplation of T.C.A. 67-6-702(a)(1), the tax rate limitation set forth therein does not apply. Accordingly, the Appellant's argument that the 10% tax rate allowed under the Private Act is in violation of the general law as set forth at T.C.A. 67-6-702 is without merit.

For the foregoing reasons the judgment of the Chancery Court is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against Glenda B. Rogers d/b/a Ocoee River Rats and her surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE